1

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Case No. 26-1808

(D.C. Case No. 3:25-cv-00820-TWR-BLM)

### In re ROBERT EMERT, Petitioner

# <u>STACKING ORDER</u>

*Petition for Writ of Mandamus Under 28 U.S.C. § 1651(a)*

---

**Note to the Court:** This filing consists of three documents totaling 965 Bates-numbered pages plus a supplemental docketing record. In the interest of judicial economy and in compliance with FRAP 21 and the Ninth Circuit's e-filing requirements, Petitioner has organized the filing as follows:

## <u>DOCUMENT 1</u>

### Petition for Writ of Mandamus with Appendices

Pages 1–104  |  Bates 000001–000104

| Component | Pages | Bates Range |
|---|---|---|
| Certificate of Interested Parties | 2–3 | 000002–000003 |
| Table of Contents | 3–4 | 000003–000004 |
| Table of Authorities | 5–7 | 000005–000007 |
| Executive Summary | 8–15 | 000008–000015 |
| Petition Body (Sections I–VI) | 16–42 | 000016–000042 |
| Certificate of Compliance | 43 | 000043 |
| Proof of Service | 44–45 | 000044–000045 |

2

| | | |
|---|---|---|
| IFP Motion with Declaration | 46–50 | 000046–000050 |
| Appendix A — Feb. 11, 2026 Order (ECF 33) | 51–55 | 000051–000055 |
| Appendix B — Dec. 11, 2025 Order (ECF 25) | 56–63 | 000056–000063 |
| Appendix C — May 16, 2025 Order (ECF 8) | 64–68 | 000064–000068 |
| Appendix D — CA Supreme Ct. Denial (S284407) | 69–102 | 000069–000102 |
| Appendix E — CA Court of Appeal Denial (D083239) | 103–104 | 000103–000104 |

# DOCUMENT 2

### Exhibits to Petition for Writ of Mandamus

Pages 1–861 | Bates 000105–000965

| Exhibit | Description | Bates Range |
|---|---|---|
| F | AG Email Admissions (Oct. 10, 2025) | 000107 |
| G | Schuck Recordings — Malice-Negation Evidence (AG Lodgments 3, 6, 35) (4 parts) | 000149 |
| H | Petitioner's Traverse (Filed Feb. 20, 2026) | 000811 |
| I | Traverse App. A — Recorded Admissions Analysis (47 Peña admissions, timestamped) | 000837 |
| J | Traverse App. H — DA Correspondence (14 months PC § 278.7 defense emails, suppressed) | 000864 |
| K | USPS Postmarked Envelope — Mailing Delay | 000874 |
| L | Clerk Correspondence — Docketing/ADA | 000867 |
| M | Clerk Email — Mandamus Filing (Mar. 2, 2026) | 000883 |
| N | Original Traverse — Court-Stamped Filing Date | 000888 |
| O | DA CPRA Denial (Feb. 18, 2026 — Glomar Response) | 000953 |

# DOCUMENT 3

### District Court Docketing Record

*(Requires Docketing in District Court)*

Petitioner's February 23, 2026 email to the Clerk of Court and all parties, requesting docketing of filed documents that remain absent from the docket and adjudication of pending ADA accommodation requests. This email—with its attachments—constitutes a formal request that has

not been docketed despite submission to the Court's e-filing address and service on all parties including Respondent's counsel, the AG supervisor, and the FBI contacts in this matter. Included here to preserve the complete procedural record for this Court's review.

4

# FILING SUMMARY

---

**What this filing is:** A petition for writ of mandamus under 28 U.S.C. § 1651(a) and FRAP 21, challenging the district court's February 11, 2026 Order (ECF No. 33), which applied *Cullen v. Pinholster* to categorically exclude Petitioner's *Brady* evidence without first determining whether any California court adjudicated those claims on the merits—a threshold analysis required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**What the exhibits prove:** The prosecution's own investigator admitted on recording that Petitioner would "probably win at trial" and had "good cause for sure." The prosecution suppressed this and five other categories of exculpatory evidence to coerce a guilty plea, then every level of the justice system—DA, AG, and district court—has acted to prevent judicial review of that suppression.

**Why mandamus is necessary:** Petitioner has filed in seven courts over three years. No court— state or federal—has reached the merits of the constitutional violation. The district court's *Pinholster* ruling ensures none will unless this Court intervenes. A post-judgment appeal would require remand for the very determination mandamus directs now. That is not an adequate alternative remedy—it is a detour to the same destination.

---

# THE QUESTION

*If the State's own investigator told the defendant on recording that he would "probably win at trial," and the prosecution suppressed that recording to coerce a guilty plea—on what constitutional basis may a federal court refuse to hear it?*

---

# THE ANSWER

The State's position is that prosecutors can throw you in jail, withhold exculpatory evidence, coerce a guilty plea under massive duress, and then use that coerced plea as a shield from accountability—while arguing you should have produced the evidence they were hiding from a jail cell.

The United States Supreme Court rejected this exact framework in *Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

## NUMBERING CONVENTION

**Page numbers** appear in the upper-right corner of each page. Document 1 is numbered 1–104. Document 2 restarts at 1–861 in the upper left corner

**Bates numbers** appear in the upper-center of each page and run continuously across both documents: 000001–000104 (Document 1) and 000105–000965 (Document 2). Any citation to "Bates ___" refers to this unified numbering system.

**Document 3** is an email supplemental docketing correspondence included to preserve the procedural record.

Respectfully submitted,

/s/ Robert Emert

**ROBERT EMERT**

Petitioner, Pro Se

2351 Vista Lago Terrace, Escondido, CA 92029

(760) 612-9328 | robemert@msn.com

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Case No. _____

(D.C. Case No. 3:25-cv-00820-TWR-BLM)

*In re*

**ROBERT EMERT,**

*Petitioner,*

v.

**UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF CALIFORNIA,**

*Respondent,*

**SAN DIEGO PROBATION DEPARTMENT,**

*Real Party in Interest.*

**PETITION FOR WRIT OF MANDAMUS**

**WITH SUPPORTING DOCUMENTS**

Relief Sought from the February 11, 2026 Order

of the District Court (ECF No. 33)

**Robert Emert**
Petitioner, Pro Se

## CERTIFICATE OF INTERESTED PARTIES
### (Circuit Rule 21-3; FRAP 26.1)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 28-2.6, Petitioner Robert Emert states as follows:

**1. Corporate Disclosure Statement.** Not applicable. Petitioner is an individual proceeding pro se.

**2. Related Cases.** Pursuant to Circuit Rule 28-2.6, Petitioner identifies the following related cases:

**a.** *Emert v. San Diego Probation Department*, No. 3:25-cv-00820-TWR-BLM (S.D. Cal.) — the underlying federal habeas corpus proceeding.

**b.** *Emert v. Balerio et al.*, No. 24-5856 (9th Cir.) — § 1983 civil rights appeal. Rehearing pending.

**c.** *Emert v. Balerio et al.*, No. 25-3694 (9th Cir.) — § 1983 civil rights appeal. Rehearing pending.

**d.** *Emert v. County of San Diego et al.*, No. 3:25-cv-03646-JAH-JW (S.D. Cal.) — § 1983 civil rights action. Pending.

Dated: 02/23/26

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

# Contents

CERTIFICATE OF INTERESTED PARTIES ....................................................................2

APPENDICES ...............................................................................................................4

TABLE OF AUTHORITIES .........................................................................................5

EXECUTIVE SUMMARY ...........................................................................................8

I. INTRODUCTION AND RELIEF REQUESTED ....................................................16

    A. The District Court's Errors ...............................................................................16

    B. The Evidence ...................................................................................................18

    C. Relief Requested..............................................................................................18

II. STATEMENT OF JURISDICTION......................................................................20

III. STATEMENT OF THE ISSUES .........................................................................20

IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................21

V. ARGUMENT .........................................................................................................29

VI. CONCLUSION.....................................................................................................40

CERTIFICATE OF COMPLIANCE ...........................................................................43

PROOF OF SERVICE .................................................................................................44

MOTION FOR LEAVE TO PROCEED .....................................................................46

IN FORMA PAUPERIS .............................................................................................46

APPENDIX A ..............................................................................................................51

Order of February 11, 2026 ........................................................................................51

(ECF No. 33) ............................................................................................51

United States District Court Southern District of California Hon. Todd W. Robinson ....................................................................................................51

APPENDIX B ...........................................................................................56

Order of December 11, 2025 ....................................................................56

(ECF No. 25) ............................................................................................56

United States District Court Southern District of California Hon. Barbara L. Major, Magistrate Judge ....................................................................................56

APPENDIX C ...........................................................................................64

Order of May 16, 2025 .............................................................................64

(ECF No. 8) ..............................................................................................64

United States District Court Southern District of California ...................64

APPENDIX D ...........................................................................................69

California Supreme Court Denial ............................................................69

Case No. S284407 ....................................................................................69

Filed February 11, 2025 ...........................................................................69

APPENDIX E ..........................................................................................103

California Court of Appeal Denial...........................................................103

Case No. D083239 ..................................................................................103

## APPENDICES

Appendix A — Order of Feb. 11, 2026 (ECF No. 33)
Appendix B — Order of Dec. 11, 2025 (ECF No. 25)
Appendix C — Order of May 16, 2025 (ECF No. 8)
Appendix D — Cal. Supreme Court Denial (S284407)
Appendix E — Cal. Court of Appeal Denial (D083239)

000005                                                                                5

# TABLE OF AUTHORITIES

<u>CASES</u>

*Banks v. Dretke*, 540 U.S. 668 (2004) ....... passim

*Boumediene v. Bush*, 553 U.S. 723 (2008)

*Brady v. Maryland*, 373 U.S. 83 (1963) ....... passim

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004)

*Cone v. Bell*, 556 U.S. 449 (2009)

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....... passim

*Franks v. Delaware*, 438 U.S. 154 (1978)

*Harrington v. Richter*, 562 U.S. 86 (2011)

*Kyles v. Whitley*, 514 U.S. 419 (1995)

*McQuiggin v. Perkins*, 569 U.S. 383 (2013)

*Missouri v. Frye*, 566 U.S. 134 (2012)

*Santobello v. New York*, 404 U.S. 257 (1971)

*Schlup v. Delo*, 513 U.S. 298 (1995)

*Tollett v. Henderson*, 411 U.S. 258 (1973)

*United States v. Ruiz*, 536 U.S. 622 (2002)

*Williams v. Taylor*, 529 U.S. 420 (2000)

*Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014)

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977)

*Brown v. Poole*, 337 F.3d 1155 (9th Cir. 2003)

*Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) (en banc)

*Calderon v. U.S. Dist. Court*, 98 F.3d 1102 (9th Cir. 1996)

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010)

*Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc) ....... passim

*Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011)

*Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986)

*In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023)

*In re Morris*, 363 F.3d 891 (9th Cir. 2004)

*Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002)

*Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995)

*Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007) (en banc)

*People v. Neidinger*, 40 Cal.4th 67 (2006)

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const. art. I, § 9, cl. 2 (Suspension Clause)

U.S. Const. amend. V (Due Process)

U.S. Const. amend. XIV (Due Process)

28 U.S.C. § 1651(a) (All Writs Act)

28 U.S.C. § 2254

Cal. Penal Code § 278.5(a)

Cal. Penal Code § 278.7

Cal. Evid. Code § 1040

Cal. Gov. Code § 7923.600


RULES


Fed. R. App. P. 21

Rules 6 and 7, Rules Governing § 2254 Cases

CALCRIM No. 1251

# EXECUTIVE SUMMARY

***Prefatory Statement****.* In 2021, a stay-at-home father caring for his autistic son contacted the San Diego District Attorney, invoking the good cause defense under California Penal Code § 278.7. For fourteen months, he complied with every condition the DA imposed, documented in emails later suppressed. CPS cleared him. The FBI interviewed him and cleared him. His son — then fifteen — walked into a police station, filed a report requesting to live with his father. The State's own investigator told the father on tape he would "probably win at trial" and "the DA's office should never have accepted your case." DDA Balerio interviewed the son, found him "articulate and well spoken," and heard him say his father "saved" him.

Then Balerio buried all of it. She withheld fourteen months of § 278.7 compliance emails, the investigator's forty-seven recorded admissions that the case lacked merit, the son's interview, and the FBI transcript. She fabricated a threat narrative from an eleven-minute FBI call the government directed the father to make — and used it to cage a man with zero criminal history and zero flight risk for ninety days without bail, during which he suffered two STEMI heart attacks. She coerced a guilty plea and welched on the deal. The son — the alleged "victim" — returned to live with his father voluntarily on his eighteenth birthday. All of this is recorded.

The District Attorney's position is that this is acceptable. The Attorney General's position is that this is acceptable. And now the district court — which has refused to docket two traverses presenting this evidence, ignored two ADA accommodation requests, ignored a formal docketing demand under Fed. R. Civ. P. 5(d)(2) and 79(a), and declined to order production of the Brady material or an affidavit certifying its nonexistence — appears to agree. Petitioner seeks mandamus to ensure the evidence is reviewed and an innocent man is not denied his day in court because every institution in the chain has chosen to look away.

The San Diego District Attorney's position is that it is permissible to suppress recorded evidence proving a defendant would "probably win at trial," cage him for ninety days without bail, coerce a guilty plea, and then invoke that coerced plea as a bar to review. The California Attorney General's position is the same. The United States District Court for the Southern District of California has now adopted it. That is not how the Constitution works. And it is not how binding Ninth Circuit or United States Supreme Court precedent works, either.

On May 16, 2025, the district court ordered the Attorney General to lodge "**all records bearing on the merits of Petitioner's claims**." ECF No. 8 at 4. The court used this language deliberately. It did not say "transcripts." It did not say "clerk's records." It said *all records bearing on the merits*.

The Attorney General did not comply. She lodged transcripts and Petitioner's own filings. She did not lodge the prosecution file. On October 10, 2025, she admitted in writing: "We do not possess the prosecution or defense file for this case." She simultaneously revealed that she *never requested it* from the San Diego District Attorney's Office. She then certified the record "complete."

The district court accepted this. On December 11, 2025, it found the lodgment "complete" (ECF No. 25)—defining "all records bearing on the merits" as transcripts and nothing more. On February 11, 2026, the district judge affirmed, writing: "None of the materials Petitioner seeks were part of the record before the state court." ECF No. 33 at 2 (Appendix A to this Petition).

That statement is demonstrably false. The *Brady* material *is* in the record—because Petitioner put it there. The moment he was released from incarceration, he gave the suppressed evidence to his public defender, who refused to investigate. He then filed it himself in eleven separate proceedings across three levels of the California court system. He filed it in this Court's own docket. The evidence is not missing. It is being *excluded*—excluded because the district court applied *Cullen v. Pinholster*, 563 U.S. 170 (2011), without ever determining whether any state court adjudicated the *Brady* claims on the merits. None did.

What the suppressed evidence proves—and what no court has ever reviewed on the merits—is this:

The District Attorney's own investigators knew there was no case. DAI Steven McIntosh, the first investigator assigned, was cooperative—he emailed Petitioner that the child's mother "is willing to give over custody" (3-SER-319) and directed Petitioner to contact the FBI to resolve a jurisdictional conflict. DAI Luis Peña, who took over the investigation, recorded his conclusions in a three-hour telephone call on September 7, 2022:

"You definitely will get a trial and personally, I think you'll win that." (02:31:23)

"The DA's office should never have accepted your case because he was 14 when this all started on paper." (02:54:47)

*"I think you have good cause for sure." (02:38:13) (Exhibit I).*

"I don't want to file charges or write a warrant for your arrest because I believe this should be handling in family court." (02:21:43)

The DA did nothing for over a year—because both investigators knew there was no prosecutable case. Then DDA Balerio manufactured one.

In December 2022, Balerio took an eleven-minute FBI call—a call the government itself had directed Petitioner to make—and extracted fragments to fabricate a "threat" narrative. On that call, Petitioner stated three separate times: "I

am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever. I'm not a violent person." (00:06:33–37). The FBI operator responded: "Thank you for calling the FBI. I hope you have a great day today." The FBI investigated, met with Petitioner in person at their San Diego field office, and *cleared him completely*. Balerio never charged PC § 422 (criminal threats)—because she knew the full transcript would destroy her fabrication. She *never disclosed* the FBI clearance or the full transcript. She used the fragments to cage Petitioner for ninety days without bail. *See* Traverse Appendix A, Part V (complete FBI transcript and clearance documentation).

Peña signed the arrest warrant despite telling Petitioner on tape that he did not believe probable cause existed. His supervisors told him: "Just finish the damn warrant and don't worry about it" (00:27:12). The warrant affidavit omitted eight months of PC § 278.7 defense documentation, Peña's own assessment that Petitioner would "probably win," McIntosh's documentation that the mother had agreed to transfer custody, and Bryce's own statements wanting to live with his father. An arrest warrant affidavit that omits all exculpatory evidence known to the affiant is perjury under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* Traverse Appendix A, Part I (complete Peña transcript analysis with more than 47 timestamped admissions).

While Petitioner sat in jail on this perjured warrant, DDA Balerio interviewed his son Bryce—the alleged "victim." Bryce told her: "My dad didn't do anything wrong. He saved me per my request." He said he "could have left at any given point" and that he "want[ed] to be a witness for [his] dad." Balerio never disclosed that this interview occurred. She suppressed the tape and prosecuted anyway. *See* Traverse Appendix A, Part II (complete Balerio/Bryce interview transcript with timestamps).

On April 3, 2023—the morning of trial—after ninety days of detention on fabricated grounds, two STEMI heart attacks, and severe medical deterioration, Petitioner accepted a guilty plea. Every piece of exculpatory evidence was withheld. The plea was predicated on an explicit promise that his son Bryce would be allowed to return home. Defense counsel Badillo confirmed: "the DA knows…that you resolved the case based on the conversation she and I had with Andrea" (5-SER-798, 00:16:58). *See* Traverse Appendix A, Part IV (welched plea deal recordings with timestamps).

DDA Balerio and Andrea Schuck immediately reneged. Schuck conditioned Bryce's return on Petitioner dropping his civil rights claims: "I will not send an offer…until you drop the civil and appeal case. FULL STOP." Balerio was CC'd on this email and did nothing. For two and a half years, Petitioner's son was held hostage to a broken promise by the very people who coerced the plea that was supposed to bring him home.

This is what the district court has refused to review. This is what the Attorney General has refused to produce. And this is what *Cullen v. Pinholster* is being weaponized to exclude—not because the evidence is unreliable or immaterial, but because the prosecution successfully hid it from the state courts and the federal court will not look at it because it is not in the state record the prosecution corrupted.

The United States Supreme Court has already said this is unconstitutional. *Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Common decency should have said so, too.

The district court had the discretion under Rules 6 and 7 of the Rules Governing § 2254 Cases to order the Attorney General to produce the prosecution file—or to require an affidavit explaining why it could not be produced. It did neither. Instead, it chose to hide behind *Pinholster*—a doctrine the Supreme Court expressly limited to claims "adjudicated on the merits," 563 U.S. at 187–88 n.10, and that this Court, sitting en banc, held inapplicable to unadjudicated claims. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

Three additional failures compound the constitutional injury. First, Petitioner's original traverse—hand-delivered to the Clerk's office on January 16, 2026—has never been docketed. His revised traverse filed February 20, 2026 likewise remains undocketed. A supplemental brief filed January 31 was docketed

within one business day (ECF No. 29)—demonstrating that the Clerk is capable of timely docketing when it chooses. On February 24, 2026, Petitioner sent a formal written request to the Clerk citing Fed. R. Civ. P. 5(d)(2) and 79(a). No response was received. Second, two ADA accommodation requests—filed January 16 and February 20 pursuant to 42 U.S.C. § 12132—have never been granted, denied, or adjudicated, and no interactive process has been undertaken as required by *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). Third, and most fundamentally: no court at any level has ever ordered the prosecution to produce the Brady material or certify under oath that it does not exist. The district court had the tools. Rules 6 and 7 of the Rules Governing § 2254 Cases authorized it to expand the record and compel production. It chose silence—and that silence now extends to Petitioner's filings, Petitioner's accommodation requests, and Petitioner's constitutional claims alike.

That is the position of the San Diego District Attorney. That is the position of the California Attorney General. And that is now the position of the United States District Court for the Southern District of California.

It is not, however, the position of this Court. This Court has already held—in binding en banc authority the district court failed to cite—that *Pinholster*'s limitation does not apply to claims never adjudicated on the merits. *Dickens*, 740 F.3d at 1321. This petition asks the Court to enforce its own precedent.

# I. INTRODUCTION AND RELIEF REQUESTED

If *Brady*-suppressed evidence is not in the state court record because the prosecutor hid it, and the federal court refuses to consider it because it is not in the state court record, then in what forum does the Constitution require *Brady* violations to be reviewed?

The United States Supreme Court has answered this question: "[A] rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). As the foregoing Executive Summary demonstrates, the district court has adopted precisely this untenable framework. Mandamus is the only available vehicle to correct this structural error before final judgment; delay would ratify the very *Brady* violation that *Banks v. Dretke* forbids. This section identifies the three specific legal errors that independently warrant mandamus relief.

A. The District Court's Errors

*First*, the district court applied *Cullen v. Pinholster*'s record limitation without the threshold merits-adjudication determination that is the precondition to its application. *Pinholster* itself limits § 2254(d)(1) review to the state court record only for claims "adjudicated on the merits." 563 U.S. 170, 181 (2011). The Court expressly reserved the question of unadjudicated claims: "We do not decide what

standard applies when a state court disposes of a claim on procedural grounds." 131 S.Ct. at 1401 n.10.

This Court answered that reserved question in binding en banc authority. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc): "[W]here a state court does not decide a claim on the merits, § 2254(d) is inapplicable, and the federal court reviews the claim de novo." *See also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011) (*Pinholster* inapplicable to *Brady* claim where state court never reached the merits); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (no merits adjudication requires de novo review with full evidentiary development); *Amado v. Gonzalez*, 758 F.3d 1119, 1135–37 (9th Cir. 2014) (state court's procedural dismissal of *Brady* claim did not survive AEDPA; habeas granted after de novo review).

No California court adjudicated Petitioner's *Brady* claims on the merits. The Attorney General herself concedes that Ground Three (*Brady*) is exhausted. ECF No. 16 at 5. Exhausted but unadjudicated on the merits means de novo federal review under *Dickens*—not *Pinholster* exclusion. Yet the district court's February 11, 2026 Order (ECF No. 33) applied *Pinholster* categorically. It never cited *Dickens*, *Gonzalez*, *Pirtle*, or *Amado*. It never identified which state court purportedly adjudicated the *Brady* claims on the merits. It never made the threshold determination. This is clear legal error—not a close call.

*Second*, the district court abdicated its authority under Rules 6 and 7 of the Rules Governing § 2254 Cases. The court's own order directed the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 4. When the Attorney General admitted she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—the court accepted the certification of "completeness" without inquiry. The court had discretionary authority to order production or require an affidavit explaining the deficiency. It exercised neither. That is not deference. It is abdication.

Third, the district court's framework allows the State to profit from its own suppression—the precise result *Banks* declared untenable. 540 U.S. at 696.

B. The Evidence

The magnitude of the suppressed evidence is documented in the Executive Summary supra, Petitioner's Traverse Appendix A (Exhibit I), and Exhibit G. It includes six categories of material exculpatory evidence—none of which any court has ever reviewed on the merits.

C. Relief Requested

Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Southern District of California to:

**1. VACATE** the portion of its February 11, 2026 Order (ECF No. 33) that excludes Petitioner's evidence under *Cullen v. Pinholster* without the threshold merits-adjudication determination required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**2. DIRECT** the District Court to determine, as a prerequisite to applying § 2254(d) deference, whether any California court adjudicated Petitioner's *Brady* claims on the merits—and if not, to conduct de novo review with full evidentiary development as required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**3. ORDER** the Attorney General, pursuant to Rule 7 of the Rules Governing § 2254 Cases, to obtain and lodge the complete prosecution file from the San Diego District Attorney's Office, including the suppressed recordings that are the subject of Petitioner's *Brady* claims.

**4. GRANT** expedited consideration of this petition and, if necessary, a temporary stay of district court proceedings pending resolution.

In the alternative, Petitioner requests any other relief this Court deems just and appropriate.

## II. STATEMENT OF JURISDICTION

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).

The district court's February 11, 2026 Order (ECF No. 33) is not a final judgment subject to appeal under 28 U.S.C. § 1291. It is an interlocutory ruling that establishes the legal framework under which Petitioner's habeas claims will be adjudicated—a framework that categorically excludes the evidence proving those claims. Because no adequate alternative remedy exists to correct this structural error before it produces a final judgment on a corrupted record, mandamus is the only available vehicle. *See Calderon v. U.S. Dist. Court (Nicolaus)*, 98 F.3d 1102, 1105 (9th Cir. 1996).

## III. STATEMENT OF THE ISSUES

**1.** Whether a district court commits clear legal error by applying *Cullen v. Pinholster*'s record-limitation rule to exclude a petitioner's evidence without first determining that the relevant state court "adjudicated the claim on the merits"—the threshold finding required by *Pinholster* itself, 563 U.S. 170, 187–88 n.10 (2011),

and by this Court's binding en banc decision in *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and confirmed in *Amado v. Gonzalez*, 758 F.3d 1119, 1135–37 (9th Cir. 2014).

**2.** Whether *Pinholster* bars federal habeas review of *Brady* material that is absent from the state court record because the prosecution suppressed it, where no state court adjudicated the *Brady* claim on the merits despite Petitioner raising the claim through eleven separate procedural vehicles across three levels of state courts—and where the Attorney General concedes the claim is exhausted. ECF No. 16 at 5.

**3.** Whether a district court abuses its discretion under Rules 6 and 7 of the Rules Governing § 2254 Cases by accepting the Attorney General's certification that the state court record is "complete" and refusing to expand the record, where the Attorney General admits she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—and where the court's own order required lodgment of "all records bearing on the merits." ECF No. 8 at 4.

## IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A. The Underlying Prosecution and Suppressed Evidence**

On September 7, 2022, Petitioner participated in a three-hour recorded telephone conversation with District Attorney Investigator Luis Peña regarding allegations under California Penal Code § 278.5(a). During that call, DAI Peña made forty-seven timestamped admissions that the prosecution was baseless, including that Petitioner had "good cause for sure" and would "probably win at trial." *See* Traverse Appendix A, Part I (forensic transcript analysis with timestamps). DAI Peña further stated: "I don't want to file charges or write a warrant for your arrest because I believe this should be handl[ed] in family court." *Id.* at 02:21:43. None of these admissions were disclosed to the defense.

On February 17, 2023, Deputy District Attorney Balerio interviewed the alleged victim—Petitioner's then-fifteen-year-old son, Bryce—who told the prosecutor over thirty-two minutes that his father "did nothing wrong." *See* Traverse Appendix A, Part II. DDA Balerio promised Bryce the case would be resolved, then suppressed the recording and continued prosecution. The defense was never informed this interview occurred. Traverse Appendix A, Part III (Badillo recording: defense counsel confirms interview "never disclosed").

Additional suppressed evidence includes: an FBI call transcript proving Petitioner made no threats—directly contradicting the prosecution's "danger to community" narrative used to secure ninety days of pretrial detention (Traverse Appendix A, Part V); recorded evidence of a plea agreement the prosecution

immediately breached (Traverse Appendix A, Part IV); California Penal Code § 278.7 defense evidence including a CPS clearance letter finding no abuse or neglect (Traverse Appendix A, Part V); and recorded statements by the prosecution's own complaining witness, Andrea Schuck, negating the essential "malice" element of PC § 278.5(a) (Exhibit G). In total, the prosecution suppressed six categories of material exculpatory evidence across the duration of the case. This evidence is not impeachment material subject to *United States v. Ruiz*, 536 U.S. 622 (2002)—it is core exculpatory evidence that proves the absence of the crime's essential element.

Petitioner entered a guilty plea on April 3, 2023. He was COVID-symptomatic on the morning of trial, had been detained for ninety days on the strength of the fabricated threat narrative, and was entirely unaware of the exculpatory evidence the prosecution was withholding. The plea was predicated on an explicit promise— confirmed by defense counsel on tape—that his son Bryce would be allowed to return home. *See Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (off-the-record oral promise inducing plea is enforceable; habeas granted); *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (plea agreements are contracts under *Santobello*; due process right to enforcement). He did not discover the suppressed evidence until approximately four months after his plea—a temporal impossibility that defeats any argument that the plea constituted waiver of the *Brady* claims.

## B. The State Court Proceedings

Upon discovering the suppressed evidence, Petitioner immediately provided it to his public defender, who refused to investigate. Petitioner then raised the *Brady* claims through eleven separate procedural vehicles across three levels of California courts. At the trial court level, Petitioner filed a motion to disqualify the District Attorney under Penal Code § 1424, a motion to dismiss, ex parte motions, a motion to withdraw the guilty plea, and two *Marsden* motions. The trial court refused to hear the Peña recording and denied all motions. Lodgment 14 ("The motion is denied. … You have your record.").

On direct appeal, appointed counsel filed a *Wende* brief—which by definition identifies no arguable issues. *Smith v. Robbins*, 528 U.S. 259, 265 (2000). The Court of Appeal summarily denied without addressing the *Brady* claims. Lodgments 20–21. In the California Supreme Court, Petitioner submitted approximately 300 pages of exhibits documenting the suppressed evidence. The court returned the exhibits unfiled because they exceeded the page limit, then denied the petition without discussion. Lodgments 53, 25. The operative language of the Superior Court habeas order—"ORDER TAKING NO ACTION"—confirms by its terms that no court adjudicated Petitioner's claims on the merits. Lodgment 22.

The Attorney General's own lodgments prove each of these facts. Petitioner does not ask this Court to take his word for it—the record the State itself lodged establishes the obstruction. That is not waiver. That is exhaustion. The Attorney General concedes as much: Ground Three (*Brady*) is exhausted. ECF No. 16 at 5.

## C. The Federal Habeas Proceedings

Petitioner filed a federal habeas petition under 28 U.S.C. § 2254 in the Southern District of California. On May 16, 2025, the district court ordered the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 5, ¶ 6. The court used this sweeping language three separate times in the same order. ECF No. 8 at 4–5.

On September 22, 2025, the Attorney General lodged clerk's transcripts, reporter's transcripts, and Petitioner's own state court filings—but not the prosecution file. ECF No. 14. On October 10, 2025, Deputy Attorney General Kristen Chenelia admitted in writing: "We have lodged with the court and supplied you with all documents in our possession pertaining to your case." Exhibits F, J. When Petitioner asked whether the Attorney General had requested the prosecution file from the District Attorney, Deputy AG Chenelia fell silent. She has never answered that question. The reason is clear: she never requested it.

Petitioner went further. On February 8, 2026, he filed a California Public Records Act request directly with the San Diego District Attorney's Office requesting the complete prosecution file across eight categories—the same categories the Attorney General admitted she never requested before certifying the lodgment "complete." Gov. Code § 7920 et seq. The District Attorney's response, received February 18, 2026, formally denied the request in its entirety. (Exhibit L.) The DA invoked Government Code § 7923.600 (investigatory records exemption) and Evidence Code § 1040 (official information privilege), and issued a "Glomar" response—refusing to "confirm nor deny" the existence of the Peña recordings. This from the office whose own investigator made the recordings, and whose contents Petitioner has already filed in this Court's own docket. The DA is not protecting an investigation. The DA is protecting a conviction.

This denial independently defeats any argument under 28 U.S.C. § 2254(e)(2) that Petitioner "failed to develop" the factual basis of his claims. Section 2254(e)(2) bars evidentiary hearings only when the petitioner bears responsibility for the undeveloped record. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Here, the State has formally refused to produce the evidence through every available channel— judicial orders, informal requests, safe harbor demands, and now public records law. Petitioner did not fail to develop the record. The State is preventing its development.

As of this filing, every institution possessing the suppressed evidence—the District Attorney, the Attorney General, and the district court—refuses to produce it.

On December 11, 2025, Magistrate Judge Major found the lodgment "complete" by equating clerk's and reporter's transcripts with "all records bearing on the merits." ECF No. 25 at 3. On February 11, 2026, Judge Robinson overruled Petitioner's Rule 72(a) objection and applied *Cullen v. Pinholster* to exclude the suppressed evidence from federal review. ECF No. 33 at 2. Robinson's order never cited *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). It never cited *Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011), *Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002), or *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014). It never identified which state court purportedly adjudicated the *Brady* claims on the merits. It never made the threshold determination that is the precondition to *Pinholster*'s application.

## D. The Resulting Structural Impossibility

The record now establishes a three-tier pattern of institutional protection. The District Attorney suppressed six categories of exculpatory evidence and coerced a guilty plea. The Attorney General, ordered to lodge "all records bearing on the merits," never requested the prosecution file containing that evidence—then certified the record as "complete." The district court excluded the evidence from federal review because it was absent from the state record the prosecution had

corrupted. No court—state or federal—has ever reviewed the suppressed evidence on the merits.

The suppressed evidence does not merely support a defense—it negates a required element of the offense. A conviction under § 278.5(a) requires proof that the defendant acted "maliciously," meaning with "the unlawful intent to disturb, defraud, annoy, or injure someone else." CALCRIM No. 1251; *see People v. Neidinger*, 40 Cal.4th 67 (2006). The suppressed recordings of Andrea Schuck—Bryce's mother and the prosecution's complaining witness—prove the affirmative opposite of malice: "I never wanted you arrested" (00:47:31); "I do want to share the kids with you" (00:05:11). Petitioner invited Ms. Schuck to spend Christmas morning with the family, invited her on two Disney World vacations, and was invited by her to dinner and church after his release—conduct entirely inconsistent with a malicious crime. *See* Exhibits G, I (complete malice-negation evidence and recorded admissions analysis). Petitioner immediately notified the District Attorney's Office, the Escondido Police Department, and Child Protective Services upon taking emergency custody. CPS investigated and cleared Petitioner of abuse or neglect. These facts establish the § 278.7 defense and simultaneously negate the malice element the prosecution was required to prove beyond a reasonable doubt. All of this evidence was suppressed.

The ultimate vindication of Petitioner's claims is not hypothetical. Bryce—the alleged "abduction victim"—returned to live with Petitioner on his eighteenth birthday. In six months, he completed his high school diploma, obtained his driver's permit, and enrolled in college. The prosecution's theory that Petitioner "abducted" his own son has been refuted by the only person whose testimony matters—the son himself.

## V. ARGUMENT

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). This Court evaluates mandamus petitions under five factors: (1) whether the petitioner has no other adequate means to attain the relief sought; (2) whether the right to issuance of the writ is "clear and indisputable"; (3) whether the issuing court, in its discretion, is satisfied the writ is appropriate under the circumstances; (4) whether the issue is novel and of first impression; and (5) whether the issue is likely to recur and evade review. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). This Court is "neither compelled to grant the writ when all five factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023). All five factors are satisfied here.

**A. The District Court Committed Clear Legal Error (Bauman Factor 3)**

**1.** *Pinholster* **Does Not Apply Without a Merits Adjudication**

*Cullen v. Pinholster* limits § 2254(d)(1) review to the state court record, but only for claims "adjudicated on the merits in State court proceedings." 563 U.S. 170, 181 (2011). The Court expressly reserved the question of unadjudicated claims: "We do not decide what standard applies when a state court disposes of a claim on procedural grounds." 131 S.Ct. at 1401 n.10.

This Court answered that reserved question in binding en banc authority. In *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), this Court held: "[W]here a state court does not decide a claim on the merits, § 2254(d) is inapplicable, and the federal court reviews the claim de novo." *See also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011) (*Pinholster* inapplicable to *Brady* claim where state court never reached the merits); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (no merits adjudication requires de novo review with full evidentiary development).

This Court's decision in *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014), is directly on point. In *Amado*, the California Court of Appeal dismissed a *Brady* claim on procedural grounds. This Court held the state court's dismissal was "contrary to clearly established Federal law," reviewed the *Brady* claim de novo, and granted habeas relief. *Id.* at 1135–37. The panel emphasized: "The prosecutor's

obligation under *Brady* is not excused by a defense counsel's failure to exercise diligence with respect to suppressed evidence." *Id.* at 1136. If *Amado*'s state court—which at least discussed the *Brady* evidence before dismissing procedurally—did not render a merits adjudication triggering *Pinholster*, then Petitioner's state courts—which returned exhibits unread, took "no action," and filed *Wende* briefs raising nothing—certainly did not. *Cone v. Bell*, 556 U.S. 449, 472 (2009) (de novo review required when state courts dismissed *Brady* claims on procedural grounds without reaching the merits).

The district court's February 11, 2026 Order applied *Pinholster* categorically. ECF No. 33 at 2. It never cited *Dickens*, *Gonzalez*, *Pirtle*, *Amado*, or *Cone*. It never identified which California court purportedly adjudicated Petitioner's *Brady* claims on the merits. It never made the threshold determination that is the precondition to *Pinholster*'s application. A district court that applies a record-limitation rule without satisfying the rule's threshold condition—while ignoring binding en banc authority directly on point—commits clear legal error. This is not a close call.

*Tollett v. Henderson*, 411 U.S. 258 (1973), does not alter this analysis—though the Attorney General has invoked it. ECF No. 16 at 2. *Tollett* bars review of waived pre-plea defects, not claims that a plea was rendered involuntary by undisclosed exculpatory evidence proving factual innocence. *See United States v. Ruiz*, 536 U.S. 622 (2002) (distinguishing impeachment from core exculpatory

evidence—inapposite here). The Ninth Circuit has squarely held that *Tollett* "does not bar a *Brady* claim if the petitioner contends that his guilty plea was not voluntary and intelligent because the plea was made in the absence of withheld *Brady* material." *Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995).

**2. The *Richter* Presumption Is Rebutted by the State's Own Record**

The district court may have assumed that the California Supreme Court's form denial constituted a merits adjudication under *Harrington v. Richter*, 562 U.S. 86, 99 (2011). But *Richter*'s presumption applies only "absent indication to the contrary." *Id.* And the presumption is "quite weak" when "evidence that the state court did not address the federal claim" exists. *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

The Attorney General's own lodgments provide the "indication to the contrary." The California Superior Court issued an "ORDER TAKING NO ACTION" on the habeas petition—not a denial, a refusal to engage. Lodgment 22. The California Supreme Court returned approximately 300 pages of exhibits unfiled because they exceeded the page limit, then denied the petition—without ever reviewing the evidence that was the basis of the *Brady* claims. Lodgment 53. On direct appeal, appointed counsel filed a *Wende* brief, which by definition identifies no arguable issues and cannot constitute a merits adjudication of claims the brief

does not raise. *Smith v. Robbins*, 528 U.S. 259, 265 (2000); Lodgments 20–21. A court that returns evidence unread cannot have adjudicated the claims that evidence supports.

The Attorney General herself concedes that Ground Three (*Brady*) is exhausted. ECF No. 16 at 5. A claim that is exhausted but never adjudicated on the merits receives de novo federal review under *Dickens*—not *Pinholster* exclusion. The district court applied the wrong framework.

**3. The District Court Abdicated Its Rule 6 and Rule 7 Authority**

Rule 7 of the Rules Governing § 2254 Cases authorizes the court to "direct the parties to expand the record by submitting additional materials relating to the petition." The district court's own May 16, 2025 order directed the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 5, ¶ 6. The court used this sweeping language three times in the same order. ECF No. 8 at 4–5.

When the Attorney General admitted in writing that she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—the district court had both the authority and the obligation to act. It could have ordered the Attorney General to obtain the file. It could have required an affidavit explaining why the file was not

requested. It could have issued a Rule 7 order expanding the record. It did none of these things. It accepted a certification of "completeness" for a record that the certifying party admitted she never tried to complete. That is not deference. It is abdication.

## 4. Section 2254(e)(2) Does Not Bar Evidentiary Development

Even if the *Richter* presumption were not rebutted, § 2254(e)(2) does not bar evidentiary development. That provision applies only when a petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). A petitioner has not "failed to develop" the facts when he was diligent but circumstances beyond his control prevented development. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Petitioner raised the suppressed evidence through eleven separate procedural vehicles in state court—every one was denied without merits review. Lodgments 3, 6, 14, 20–25, 53. The California Supreme Court returned 300 pages of exhibits unread. Lodgment 53. This is not a failure to develop. It is a failure of every court to permit development. Section 2254(e)(2) does not reward the State's obstruction any more than *Pinholster* does.

The DA's formal CPRA denial (Exhibit L) eliminates any possible reliance on § 2254(e)(2) to deny an evidentiary hearing. The State cannot suppress evidence during prosecution, invoke privilege to hide it during post-conviction review, and

then argue the petitioner "failed to develop" the record. That is the definition of the structural impossibility this Court's mandamus authority exists to correct.

## B. Petitioner Has No Other Adequate Means to Attain Relief (Bauman Factor 1)

If Petitioner proceeds to final judgment on the current record, his *Brady* claims will be adjudicated without the evidence that proves them—because that evidence has been categorically excluded. The result is predetermined: denial on a truncated record. An appeal from that denial would require this Court to remand for the very evidentiary development the district court has refused to permit, wasting years in a case where the petitioner has already pursued relief for over three years across seven courts.

This Court has granted mandamus in precisely these circumstances. In *Calderon v. U.S. Dist. Court (Nicolaus)*, 98 F.3d 1102, 1105 (9th Cir. 1996), this Court issued the writ in a habeas case where the district court's legal framework was fundamentally flawed. The purpose of mandamus is to prevent structural errors from contaminating final judgment—not to force petitioners to litigate through a defective process, lose, appeal, obtain a remand, and start over. *See also Cheney*, 542 U.S. at 380–81 (mandamus appropriate to correct "clear abuse of discretion" before irreparable harm). The structural defect here cannot be cured on appeal without

remand, and remand would only require the district court to do what mandamus would direct it to do now: make the threshold *Pinholster* determination and consider the suppressed evidence.

This case is distinguishable from *In re Morris*, 363 F.3d 891 (9th Cir. 2004), where this Court denied mandamus in a habeas case as premature because the district court had not yet ruled on the disputed issue. Here, Robinson *has* ruled. The February 11, 2026 Order categorically excludes the suppressed evidence under *Pinholster* without making the threshold determination *Dickens* requires. ECF No. 33. The traverse will be adjudicated under this defective framework. A post-judgment appeal would require this Court to remand for the very determination mandamus would direct now—adding years to a case already spanning three years across seven courts, with no change in outcome. That is not an adequate alternative remedy. It is a detour to the same destination.

The human cost of that detour is not abstract: Petitioner has suffered two STEMI heart attacks since his release, and the ongoing constitutional deprivation imposes irreparable harm that no post-judgment remedy can cure.

This is not a petitioner who slept on his rights. The eleven separate procedural vehicles documented in Section IV.B—and confirmed by the Attorney General's own lodgments—demonstrate exhaustion of every remedy the legal system provides. Mandamus is not his first resort—it is his last.

The procedural hostility is further illustrated by the district court's February 13, 2026 Minute Order (ECF No. 35), which imposed a seven-day traverse deadline on a pro se litigant who receives all orders by U.S. Mail—a deadline Petitioner met only through independent docket monitoring. Exhibits H, K.

## C. Petitioner Will Suffer Irreparable Harm (Bauman Factor 2)

The harm is structural: once the traverse is adjudicated on an incomplete record, the exclusion of evidence becomes baked into the district court's merits determination. This Court would then review that determination under AEDPA deference—but the evidence proving the constitutional violations would never have been in the record. The exclusion is irreversible absent mandamus or remand.

The irreparable harm is compounded by the convergence of what the excluded evidence proves. The suppressed evidence simultaneously establishes three independent constitutional violations through the same factual record. *First*, actual innocence: the Schuck recordings, Peña admissions, CPS clearance, and § 278.7 emails negate the essential "malice" element of PC § 278.5(a) as a matter of law. Under *Schlup v. Delo*, 513 U.S. 298 (1995), and *Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007) (en banc), actual innocence overcomes all procedural barriers to federal review. *Second*, a complete statutory defense: the § 278.7 good-cause defense makes the charged conduct lawful. *Third*, plea involuntariness: under

*Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995), suppression of this evidence renders the plea involuntary because no rational defendant would have pled guilty with knowledge of it; under *Santobello*, 404 U.S. at 262, the broken plea promise independently vitiates the plea. Petitioner's two STEMI heart attacks and federally-adjudicated disability render continued probation supervision and any further delay constitutionally intolerable.

Each of the six categories of suppressed evidence independently satisfies the *Sanchez* materiality standard—"a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead guilty and would have gone to trial." 50 F.3d at 1454. Taken together, they create not merely a "reasonable probability" but an absolute certainty that any rational defendant would have rejected the plea. The *Sanchez* court warned that "prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." *Id.* at 1453. This case is that scenario executed across six evidence categories simultaneously.

**D. This Case Presents a Novel Issue of First Impression That Is Likely to Recur and Evade Review (Bauman Factors 4 & 5)**

The question presented—whether *Pinholster* can be weaponized to shield *Brady* violations from all judicial review—is one this Court has not directly

addressed. The structural pattern is straightforward and replicable: a prosecutor suppresses exculpatory evidence before trial, coerces a guilty plea, and the evidence never enters the state court record because it was hidden. The defendant discovers the evidence post-conviction, raises *Brady* claims in state court, and is denied on procedural grounds—no state court ever reviews the evidence. The defendant then seeks federal habeas relief, and the district court excludes the evidence under *Pinholster* because it was never in the state court record. The circle closes. The constitutional violation is insulated from review in any forum.

If this framework stands, *Brady*'s protections are nullified for any plea case in which the prosecution successfully hides exculpatory evidence. Any prosecutor who suppresses evidence before a plea can replicate this pattern. The more successful the concealment, the stronger the *Pinholster* bar becomes—rewarding the State for the magnitude of its own violation. This perverse incentive structure is flatly inconsistent with *Banks v. Dretke*, 540 U.S. 668, 696 (2004). Under *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023), this factor alone can justify the writ: the Court is "neither compelled to grant the writ when all five factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *Id.*

This issue will recur. Guilty pleas account for approximately ninety-four percent of criminal convictions. *Missouri v. Frye*, 566 U.S. 134, 143 (2012). In every such case where evidence is suppressed before the plea, the prosecution can invoke

*Pinholster* to prevent federal review if the district court's framework is left uncorrected. The Suspension Clause demands that the writ of habeas corpus remain "an effective remedy"—not a procedural formality that ratifies constitutional violations through circular logic. U.S. Const. art. I, § 9, cl. 2; *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Only this Court can correct the structural error before it produces a final judgment on a corrupted record.

## VI. CONCLUSION

If *Brady*-suppressed evidence is not in the state court record because the prosecutor hid it, and the federal court refuses to consider it because it is not in the state court record, then in what forum does the Constitution require *Brady* violations to be reviewed?

The district court's framework provides no answer. Under its reasoning, the prosecutor's successful suppression of evidence before the plea becomes the permanent bar to reviewing that suppression after the plea. The more effective the concealment, the more impenetrable the bar. The United States Supreme Court rejected this precise logic: "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). The Constitution demands a forum. Mandamus is the vehicle to ensure one exists.

Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Southern District of California to:

**1. VACATE** the portion of its February 11, 2026 Order (ECF No. 33) that excludes Petitioner's evidence under *Cullen v. Pinholster* without the threshold merits-adjudication determination required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**2. DIRECT** the District Court to determine, as a prerequisite to applying § 2254(d) deference, whether any California court adjudicated Petitioner's *Brady* claims on the merits—and if not, to conduct de novo review with full evidentiary development as required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**3. ORDER** the Attorney General, pursuant to Rule 7 of the Rules Governing § 2254 Cases, to obtain and lodge the complete prosecution file from the San Diego District Attorney's Office, including the suppressed recordings that are the subject of Petitioner's *Brady* claims.

**4. GRANT** expedited consideration of this petition and, if necessary, a temporary stay of district court proceedings pending resolution.

In the alternative, Petitioner requests any other relief this Court deems just and appropriate.

Dated: 03/02/26

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se
Telephone: (760) 612-9328
Email: robemert@msn.com

# CERTIFICATE OF COMPLIANCE
## (FRAP 32(g); Cir. R. 21-2)

Pursuant to Federal Rule of Appellate Procedure 32(g) and Ninth Circuit Rule 21-2, the undersigned certifies that this Petition for Writ of Mandamus complies with the applicable type-volume limitation.

**1. Type-Volume Limitation.** This petition contains approximately 7,395 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Cir. R. 21-2. This is within the 7,800-word limit prescribed by FRAP 21(d).

**2. Typeface and Type Style.** This petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, as required by Fed. R. App. P. 32(a)(5)(A) and 32(a)(6).

Dated: 03/02/26

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

# PROOF OF SERVICE

I, Robert Emert, declare under penalty of perjury that the following is true and correct:

On 03/03/26, I served the foregoing Petition for Writ of Mandamus, Certificate of Compliance, Motion for Leave to Proceed In Forma Pauperis, and all exhibits on the following parties by the methods indicated:

**1. Real Party in Interest (by email):**

Deputy Attorney General Kristen Chenelia

Office of the Attorney General

600 West Broadway, Suite 1800

San Diego, CA 92101

Email: Kristen.Chenelia@doj.ca.gov

*Method: Electronic mail*

**2. San Diego County Probation Department (by U.S. Mail):**

San Diego County Probation Department
9444 Balboa Avenue, Suite 500
San Diego, CA 92123
*Method: First-class U.S. Mail, postage prepaid*

**3. Copy to the District Court (FRAP 21(a)(1)):**

Hon. Todd W. Robinson

United States District Court

Southern District of California

333 West Broadway, Suite 420

San Diego, CA 92101

*Method: EMAIL TO THE CLERK - efile_robinson@casd.uscourts.gov*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 03/03/26 at Escondido, California.

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

# MOTION FOR LEAVE TO PROCEED
# IN FORMA PAUPERIS
## (28 U.S.C. § 1915(a); FRAP 24)

Petitioner Robert Emert, proceeding pro se, respectfully moves this Court for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and Federal Rule of Appellate Procedure 24(a), without prepayment of the $600.00 filing fee for the accompanying Petition for Writ of Mandamus.

In support thereof, Petitioner states as follows:

**1.** Petitioner is an individual proceeding pro se in all matters related to this case. Petitioner is not represented by counsel and bears all costs of litigation personally.

**2.** The underlying habeas corpus proceeding, Case No. 3:25-cv-00820-TWR-BLM, arises from a criminal conviction under California Penal Code § 278.5(a) in *People v. Emert*, Case No. SCD297230. Because this mandamus petition arises from a habeas proceeding challenging a criminal conviction, IFP status is available under 28 U.S.C. § 1915(a).

**3.** Petitioner is unable to prepay the $600.00 filing fee without undue hardship. Petitioner's sole source of income is Supplemental Security Income ("SSI") based on a federally adjudicated disability, including documented PTSD and the after-effects of two STEMI heart attacks suffered during the pretrial detention at issue in this case. SSI benefits are means-tested under 42 U.S.C. § 1382 and by definition reflect an inability to support oneself through gainful employment. The $600.00 filing fee represents a substantial portion of Petitioner's monthly income. Petitioner is also the primary caretaker of his minor son. A copy of Petitioner's SSI award statement is attached hereto. See IFP Attachment A.

**4.** Petitioner's claims are not frivolous. The mandamus petition challenges the district court's application of *Cullen v. Pinholster*, 563 U.S. 170 (2011), in contravention of binding en banc authority, *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014), and presents substantial constitutional questions regarding the availability of federal habeas review for *Brady* claims based on prosecutorial suppression of evidence.

**5.** Petitioner has been granted IFP status or has proceeded without fee payment in related proceedings in the Southern District of California and this Court.

WHEREFORE, Petitioner respectfully requests that this Court grant leave to proceed in forma pauperis and waive the $600.00 filing fee for the accompanying Petition for Writ of Mandamus.


Dated: 03/02/26

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: (760) 612-9328
Email: robemert@msn.com

# IFP ATTACHMENT A

## SSI Award Statement

# Social Security Administration
## Supplemental Security Income
Notice of Award

SOCIAL SECURITY
367 VIA VERA CRUZ
SAN MARCOS CA 92078

Date: July 3, 2025
BNC#: 25S1179G60807 DI



0000797 00000797      4 MB   2.165   SB9FNA T12 P2
SSI M06 06/26 931 25S1179G60807
ROBERT ANTHONY EMERT
2351 VISTA LAGO TER
ESCONDIDO CA 92029-5408

On May 28, 2025, we made a decision on the request for hearing that you filed on a Supplemental Security Income (SSI) claim dated June 26, 2023. The decision was that you meet the medical requirements to receive SSI. We now find that you meet the non-medical rules. Because of this, you are eligible for SSI as of March 2024 based on being disabled.

The rest of this letter explains your current monthly payment, your back payments, how we figured your payment amount, information about Medicaid, your reporting responsibilities, and your appeal rights.

### Your Current Monthly Payment

Your current monthly payment is $889.87 for July 2025. This amount includes $245.20 from the State of California. This amount will continue unless there is a change in the information we use to determine your SSI eligibility and payment amount.

See Next Page

SSA-L8025

APPENDIX A

Order of February 11, 2026
(ECF No. 33)

United States District Court Southern District of California Hon. Todd
W. Robinson

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT EMERT,<br><br>                                        Petitioner,<br><br>v.<br><br>SAN DIEGO PROBATION DEPARTMENT,<br><br>                                        Respondent. | Case No.:  3:25-CV-820 TWR (BLM)<br><br>**ORDER (1) OVERRULING PETITIONER'S OBJECTION TO MAGISTRATE JUDGE'S DECEMBER 11, 2025 ORDER; AND (2) GRANTING PETITIONER 30-DAY EXTENSION OF TIME TO FILE TRAVERSE**<br><br>(ECF Nos. 25, 26) |

Presently before the Court is Petitioner Robert Emert's Objection ("Obj.," ECF No. 26) to the Honorable Barbara L. Major's December 11, 2025 Order (the "Underlying Order," ECF No. 25) largely denying Petitioner's November 10, 2025 ("Mot. 1," ECF No. 23) and November 25, 2025 ("Mot. 2," ECF No. 24) Motions.  Petitioner asks the Court overrule Judge Major's conclusion that the lodgment in this case is "complete" and her attendant denial of Petitioner's request to compel Respondent San Diego Probation Department to lodge additional documents.  (*See, e.g.*, Obj. at 3.)

The Underlying Order must "be upheld unless it is 'clearly erroneous or contrary to law.'"  *Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1199 (S.D. Cal. 2003) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)).  "An order is

1

contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021) (quoting *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 511 (D. Idaho 2013); *Jadwin v. Cty. of Kern,* 767 F. Supp. 2d 1069, 1111 (E.D. Cal. 2011)).

Having carefully reviewed the Underlying Order, Petitioner's Objection, Respondent's Opposition to Petitioner's Objection ("Opp'n," ECF No. 28), and Petitioner's Reply ("Reply," ECF No. 29), the Court concludes that the Underlying Order is neither clearly erroneous nor contrary to law. Judge Major correctly noted that "[h]abeas review under 28 U.S.C. § 2254(d)(1) is 'limited to the record that was before the state court that adjudicated the claim on the merits.'" (Underlying Order at 3 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).) None of the materials Petitioner seeks were part of the record before the state court, (*see, e.g.*, Mot. 1 at 10; Obj. at 8), and, consequently, Judge Major correctly denied Petitioner's request to compel Respondent to add them to lodgment in this case. (*See* Underlying Order at 3–4.) Because Judge Major properly concluded that the lodgment is complete, she also rightly denied Petitioner's request for sanctions, (*see id.* at 4), and for an evidentiary hearing. (*See id.* at 5.) The Court therefore **OVERRULES** Petitioner's Objection and **AFFIRMS** Judge Major's Underlying Order.

In his Proposed Order, Petitioner requests that the Court extend his deadline to file his traverse "to thirty (30) days after Respondent files the supplemental declaration and any supplemental lodgment required by this Order." (*See* Obj. at 20.) Accordingly, the Court will grant Petitioner one final extension of time to file his traverse. Petitioner **MAY FILE** an optional traverse, if any, <u>within thirty (30) days</u> of the date of this Order. As Judge Major noted, the Court will disregard any pages after page twenty-five. (*See*

/ / /

/ / /

/ / /

/ / /

/ / /

Underlying Order at 3.)  ***Absent extraordinary circumstances, no further extensions of time will be granted.***

**IT IS SO ORDERED.**

Dated:  February 11, 2026

Honorable Todd W. Robinson
United States District Judge

3:25-CV-820 TWR (BLM)

APPENDIX B

Order of December 11, 2025
(ECF No. 25)

United States District Court Southern District of California Hon.
Barbara L. Major, Magistrate Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT,

                                    Petitioner,

v.

SAN DIEGO PROBATION DEPARTMENT,

                                    Respondent.

Case No.:  25-cv-0820-TWR-BLM

**ORDER**

**[ECF Nos. 23, 24]**

On April 7, 2025, Robert Emert, who was on probation and proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in San Diego Superior Court Case No. SCD297230. See ECF No. 1. On September 22, 2025, Respondent filed its response and a notice of lodgment of the state court record. ECF Nos. 16, 17. Emert's traverse is currently due on December 29, 2025. ECF Nos. 18, 22.

On November 10, 2025, Emert filed a 98-page motion seeking multiple reliefs, including to exceed the 25-page limit mandated by the local rule, to compel Respondent to lodge additional documents, and to sanction Respondent ("Motion I"). ECF No. 23. Fifteen days later, on November 25, 2025, while Motion I was still pending, Emert filed a 35-page motion overlapping Motion I, requesting to sanction Respondent, to compel Respondent to lodge additional documents, to exceed the 25-page limit, and to set an evidentiary hearing ("Motion II"). ECF No. 24. The Court addresses both motions in this order due to the overlapping requests.

1

**A. Request to Exceed Page Limit**

Emert requests to exceed the 25-page limit mandated by the local rule based on numerous grounds including that he had heart attacks and PTSD, that this case is extremely complicated, and pro se leniency. Motion I, at 3–6; Motion II, at 7. It is not clear whether Emert seeks to exceed the 25-page limit only for Motion I and Motion II, or also for the traverse.

Southern District of California Local Rule 7.1(h) states that all motions "must not exceed a total of twenty-five (25) pages in length, per party, for all such motions without leave of the judge who will hear the motion." S.D. LR 7.1(h). Generally, courts liberally construe pleadings of pro se litigants and strive to avoid denying pro se litigants a hearing on the merits due to procedural technicalities. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990); Eldridge v. Block, 832 F.2d 1132, 1135–37 (9th Cir.1987). However, pro se litigants "must follow the same rules of procedure that govern other litigants." Williams v. Yanez, No. 20CV738-CAB-DEB, 2021 WL 242983, at *1 (S.D. Cal. Jan. 25, 2021). Notably, courts in this circuit have held that pro se litigants must comply with page limits. E.g., Vega v. United States, 2011 WL 6014853, at *4–5 (W.D. Wash. Dec. 2, 2011) ("[Pro se Plaintiff']s failure to comply with court rules in any respect going forward in this matter will result in sanctions. Specifically, should Plaintiff fail to comply with page limits in any *future* filing in this matter, the Court will disregard any pages in excess of the page limit."); Ricketts v. CBS Corps., No. CV1903895DSFMRWX, 2020 WL 3124218, at *1 n.1 (C.D. Cal. Mar. 19, 2020) (emphasizing that the pro se litigant's "*[f]uture* failures to comply with the Local Rules and this Court's Orders [including ignoring page limits] will result in sanctions, including striking the improperly filed document," even though the court sympathized with the challenges faced by pro se litigants).

To the extent that Emert is seeking permission to exceed the page limit in Motion I and Motion II, the Court grants the request and accepts both motions as filed. However, this order serves as a warning to Emert that his traverse may not exceed the page limit authorized in this order. The Court acknowledges that Emert is proceeding pro se but notes that both Motion I and Motion II are verbose, rambling, and repetitive and include information and arguments that are not relevant to the instant case so they could have been shortened.

With regard to the traverse, Emert is relying on the wrong page limit. On September 30, 2025, District Judge Todd W. Robinson told Emert that his traverse could not exceed ten (10) pages. ECF No. 18, at 2. Judge Robinson also instructed Emert:

> Any traverse filed by Petitioner must (1) state whether Petitioner admits or denies each allegation of fact contained in the Answer, (2) be limited to facts or arguments responsive to matters raised in the Answer, and (3) not raise new grounds for relief that were not asserted in the Amended Petition. *Grounds for relief withheld until the traverse will not be considered.*

Id. at 1–2 (emphasis in original). Because Emert is proceeding pro se and has articulated reasons that may make it difficult for him to comply with the ten-page limit, the Court is enlarging the page limit to twenty-five (25) pages. As set forth below, the Court also is providing Emert with additional time to file his traverse. See infra, Section F. Emert is warned that he must use the additional time to present the facts and arguments authorized by Judge Robinson and then to edit the traverse so it is no longer than twenty-five (25) pages. See ECF No. 18, at 1–2. The Court will disregard any pages after page twenty-five. See Ricketts, 2020 WL 3124218, at *1 n.1.

## B. Request to Compel Respondent to Lodge Additional Documents

Emert alleges that the lodgment is incomplete and asks the Court to compel Respondent to lodge the "complete lodgment." Motion I, at 23–35; Motion II, at 21.

Habeas review under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Rule 5 of the Rules Governing Habeas Petitions states: "The respondent must attach to the answer parts of the transcript that the respondent considers relevant." Rules Governing § 2254 Cases, Rule 5, 28 U.S.C. § 2254. Rule 5 requires the respondent to lodge briefs and orders of the appellate courts relating to the conviction or sentence; "records" in this context means official transcripts which the respondent considers relevant as well as briefs and opinions filed with the court as part of the petitioner's trial and appeals. Buchanan v. Cate, No. 10CV423 BTM NLS, 2011 WL 2066658, at *3 (S.D. Cal. May 24, 2011), objections overruled, No. 10CV0423-BTM NLS, 2011 WL 4381729 (S.D. Cal. Sept. 19, 2011).  Significantly, "records" does not mean any evidence that the petitioner believes may be relevant to his or her case. Id.

The lodgment in this case exceeds 1,000 pages and includes the San Diego Superior Court Clerk's Transcript, the Preliminary Hearing Transcript, the Reporter's Transcript, briefs filed in the California Court of Appeal, and the opinion filed in the California Court of Appeal. ECF No. 17. In his motions, over dozens of pages, Emert complains that there are numerous documents that should be included in the lodgment, *e.g.*, prosecutorial files, discovery

25-cv-0820-TWR-BLM

documentation, and pre-guilty plea evidence that might help him. Motion I, at 23–35, 45–70; Motion II, at 11–16. Emert does not assert that the desired documents are official transcripts or briefs and opinions filed as part of his trial and appeals. Rather, Emert argues that the additional documents should be added to the record because they may be helpful to his case. As such, Emert has not established that the desired documents are (or should be) part of the record in this habeas proceeding as set forth in Rule 5. See Rules Governing § 2254 Cases, Rule 5. Moreover, Emert admits that Respondent advised him that "[w]e have lodged with the Court . . . all documents in our possession pertaining to your case." Motion I, at 23, 27. Accordingly, Emert's request to compel Respondent to lodge additional documents is denied.

## C.  Request to Sanction Respondent

Emert asks the Court to sanction Respondent. Motion I, at 36–45, 70–77; Motion II, at 9–21. While Emert's arguments are prolix and difficult to follow, they are premised on Respondent's "incomplete" lodgment. For example, Emert complains that: 1) Respondent did not "request[] or review[] the complete prosecution file" [Motion I, at 36–37]; 2) Respondent violated several court orders mandating Respondent to lodge documents because the lodgment is incomplete [Motion I, at 38]; 3) Respondent refused to respond to Emert's repeated emails complaining and demanding explanation for the incomplete lodgment, after Respondent told Emert that it had filed all records [Motion I, 28–31, 41; Motion II, at 2, 9]; and 4) the lodgment is incomplete because Emert identified countless examples of conduct or evidence occurring before or surrounding his guilty plea that were not lodged [Motion II, at 9–21]. As set forth above, the Court has found that the lodgment is complete and that Emert has not established that Respondent erred or engaged in misconduct with regard to the lodgment. See supra, Section B. Accordingly, Emert's request to sanction Respondent is denied.

## D.  Requests 1) to Order the Unsealing of the Lodged Documents, 2) to Access All Sealed Documents, and 3) to Order Respondent to Provide All Lodged Documents in Searchable PDF Format

Emert complains that the lodged documents are "sealed." Motion I, at 3, 27. Again, while Emert's motions are not entirely clear, it appears that he wants "access to all sealed/restricted PACER documents" and he wants the public to have access to all lodged documents. Motion I, at 81; Motion II, at 7. He therefore asks the Court to order the Clerk's Office to change the restriction on the lodged documents.  Emert also asks the Court to order all lodged documents be provided to him in searchable PDF format. Motion I, at 81; Motion II, at 7.

4

With regard to public access to restricted lodged documents, in order to protect "personal privacy," General Order No. 514-E mandates that "parties shall refrain from including or shall partially redact where inclusion is necessary . . . personal data identifiers [e.g., names of minors, date of birth, etc.] . . . unless otherwise ordered by the Court, or *excluded from public access*," and provides that "a party wishing to file a document containing the personal data identifiers . . . may file an unredacted document under seal." General Order No. 514-E. The lodged documents in this case contain names of minors, dates of birth, and even medical records. See ECF Nos. 17, 17-1 to 17-54. As such, they must be excluded from public access to protect "personal privacy." See General Order No. 514-E. Accordingly, Emert's request for the public to be given access to the restricted lodged documents is denied.

With regard to Emert's access to the lodged documents, the Court has been advised that Respondent provided Emert with all of the lodged documents in hard copy and in searchable PDF format. Nonetheless, to ensure that Emert has access to all of the lodged documents, Respondent is ordered to resend all of the lodged documents in searchable PDF format to Emert on or before December 18, 2025. Emert is ordered to reply to Respondent after receipt of each email or file transmission to 1) confirm with Respondent that he has received the transmission and is able to access the file or 2) notify Respondent if he has a problem with the transmission or access to the file. If Emert has not received the entire lodgment by December 19, 2025, he is ordered to email and call Respondent's counsel.

**E. Request for an Evidentiary Hearing**

In Motion II, Emert requests an evidentiary hearing "to review hidden evidence." Motion II, at 4–5, 10. Because the Court has determined that the lodgment is complete (see supra, Section B), the Court denies the request.

**F. Request to Extend the Deadline to File a Traverse**

Emert requests an extension of the deadline to file his traverse to sixty (60) days after Respondent files the complete lodgment. Motion I, at 9, 14, 24, 81. As set forth above, the Court has found that the lodgment is complete. See supra, Section B. Therefore, the Court denies as moot Emert's request for a sixty-day continuance. However, as discussed above (see supra, Sections A & D), the Court is giving Emert additional time to 1) receive and review another copy of the lodged documents, 2) prepare his traverse to ensure that it addresses the factors identified by Judge Robinson and only those factors, and 3) revise the traverse so it is no longer

5

than twenty-five (25) pages. Accordingly, Emert must file his traverse on or before January 30, 2026. No motions or other filings will be allowed.

**IT IS SO ORDERED.**

Dated:  12/11/2025

Hon. Barbara L. Major
United States Magistrate Judge

APPENDIX C

Order of May 16, 2025
(ECF No. 8)

United States District Court Southern District of California

DISTRICT COURT OF APPEALS OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

_____ )   CERTIFIED TRANSCRIPT
                                 )
THE PEOPLE,                      )
                                 )   FROM SAN DIEGO COUNTY
Plaintiff and Respondent,        )   HON. AARON H. KATZ
                                 )
          vs.                    )
                                 )   COURT OF APPEAL
ROBERT ANTHONY EMERT,            )   NO. D083587
                                 )
Defendant and Appellant.         )   CASE No. SCD297230
_____ )


REPORTER'S APPEAL TRANSCRIPT

PAGES 1 THROUGH 3/200

VOLUME 0 OF 8


APPEARANCES:


FOR THE PLAINTIFF          ROB BONTA
AND RESPONDENT:            ATTORNEY GENERAL
                          STATE OF CALIFORNIA
                          600 BROADWAY, SUITE 1800
                          SAN DIEGO, CALIFORNIA 92101


FOR THE DEFENDANT          IN PROPRIA PERSONA
AND APPELLANT:


GABRIEL HERNANDEZ, CSR NUMBER 13972
OFFICIAL COURT REPORTER

ALPHABETICAL INDEX OF WITNESSES

                                              PAGE VOL

JOSE GARZA BADILLO - Defense's Witness

Direct Examination By Mr. Phillips:.............. 1634    7
Cross-Examination By Mr. Campbell:............... 1641    7

ROBERT EMERT - Defense's Witness

Direct Examination By Mr. Phillips:.............. 1650    7
Cross-Examination By Mr. Campbell:............... 1663    7
Redirect Examination By Mr. Phillips:............ 1686    7

MARK FIDELMAN - Defense's Witness

Direct Examination By Mr. Phillips:.............. 1690    7

CHRONOLOGICAL INDEX OF WITNESSES


                                               PAGE VOL

          JOSE GARZA BADILLO - Defense's Witness

Direct Examination By Mr. Phillips:.............. 1634    7
Cross-Examination By Mr. Campbell:............... 1641    7

              ROBERT EMERT - Defense's Witness

Direct Examination By Mr. Phillips:.............. 1650    7
Cross-Examination By Mr. Campbell:............... 1663    7
Redirect Examination By Mr. Phillips:............ 1686    7

             MARK FIDELMAN - Defense's Witness

Direct Examination By Mr. Phillips:............. 1690    7

    Pages 4 through 200 are utilized for block number purposes.

    The next page number is 201 in Volume 1.  Nothing is omitted.

APPENDIX D

California Supreme Court Denial
Case No. S284407

Filed February 11, 2025

Supreme Court of California
Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically RECEIVED on 4/30/2024 7:36:26 PM

000070                                                              70

**Rob Emert**

**2351 VISTA LAGO TERRACE**

**ESCONDIDO, CA 92029**

**760-612-9328**

robemert@msn.com

**3:25-cv-00820-TWR-BLM**
**Lodgement No. 52**

## IN THE SUPREME COURT OF THE STATE OF

## CALIFORNIA

| | |
|---|---|
| **ROB EMERT** | **CASE: S284407** |
| **PETITIONER** | |
| | **NOTICE OF LODGED DOCUMENTS** |
| **vs.** | **FOR MY HABEAS CORPUS** |
| **SAN DIEGO PROBATION** | |
| **DEPARTMENT** | |
| | **RELATED CASE** |
| **Defendant** | **APPELLATE 4TH DISTRICT, DIV 1 D083239** |
| | **SAN DIEGO SUPERIOR COUT SCD297230** |

**Notice of Lodged Documents**

Pursuant to Rule 8.486(c)(2) of the California Rules of Court, Petitioner Rob Emert hereby lodges the following exhibits under separate cover in support of his Petition for Writ of Habeas Corpus:

A. Emails with San Diego District Attorney

B. Bryce Emert affidavit

C. Bryce Emert letters and emails

D. Bryce Emert transcripts

E. DAI Luis Pena call transcript that was not disclosed

F. DDA Balerio transcript of interview she did with Bryce Emert and did not disclose

G. Jose Badillo call transcripts

H. Andrea Schuck call transcripts

I. FBI call transcript

J. Emails showing no malice

K. Email to DAI Pena regarding CPS interview

L. Email from DOJ forwarding complaint to FBI

M. Email offering DA to talk to Bryce anytime as Bryce has his own phone

N. Email to DAI Pena regarding homeschool information

O. Email to DAI Pena regarding handling in family court

P. Lower Court, Patti Ratekin, did not have jurisdiction due to Peremptory challenge

Q. Public corruption complaint filed with the Superior Court, DOJ, FBI, San Diego Board of Supervisors

R. Rob Emert medical documents

S. DOJ email that forwarded public corruption complaint to the FBI

T. Comm. Patti Ratekin transcripts to prove with zero evidence, she was trying to place Bryce in a facility

U. Comm. Patti Ratekin Transcripts

V. Court transcripts

W.    Emails corroborating that Andrea Schuck was on board with the alarming narrative to place Bryce into a "facility" when all the evidence suggested that was the wrong decision

X. Amicable offers of 50/50 custody with both children going back and forth between homes as needed for their emotional wellbeing

Y. **3 Family Court Services reports recommending 50/50 custody; petitioner initially granted 60% to ease transition due to being a stay-at-home dad**

Electronic copies of these exhibits are being submitted concurrently with this notice via [electronic filing system/email/etc.] as required by Rule 8.486(c)(2). Each exhibit exceeds 300 pages in length, necessitating their submission under separate cover.

These lodged exhibits are incorporated by reference into the concurrently filed Petition for Writ of Habeas Corpus. Petitioner respectfully requests that the Court consider these exhibits in their entirety when evaluating the merits of the petition, as they constitute an integral part of the record supporting Petitioner's claims for relief.

Petitioner apologizes for the extensive nature of the exhibits but asserts that they are necessary to demonstrate his factual innocence, which is supported by overwhelming evidence. The transcribed call with District Attorney Investigator Luis Pena (Exhibit E) contains more than two dozen statements confirming that the District Attorney's office never had a case against Petitioner and that the arrest warrant was based on perjury. The emails between Petitioner and the DA's office (Exhibit A) further corroborate this.

Moreover, the transcribed calls with Petitioner's ex-wife (Exhibit H) demonstrate that Petitioner acted without malice. The only alleged "malice" that Petitioner's ex-wife could point to was Petitioner's inability to force their then 15-year-old son to call her when he refused, which does not meet the "malice intent" requirement of PC 278.5(a). The transcript of DDA Balerio's interview with Petitioner's son Bryce (Exhibit F) shows that Bryce himself was desperately pleading to continue living with Petitioner to escape emotional abuse.

To facilitate the Court's review, each exhibit has been extensively bookmarked for easy navigation to key sections and pieces of evidence. The bookmarks provide a detailed

outline of the contents of each exhibit, allowing for quick reference to specific pages, paragraphs, or statements as needed.

Furthermore, all pages in the lodged exhibits have been Bates numbered sequentially for clear identification and citation. References to specific pages or sections of the exhibits in the Petition for Writ of Habeas Corpus include the corresponding Bates numbers, enabling the Court to quickly locate the referenced material within the lodged documents.

While the exhibits are voluminous due to the complexity of the case and the extensive supporting evidence, Petitioner has made every effort to organize them in a clear, logical manner that promotes efficiency and ease of use. The bookmarking and Bates numbering are intended to streamline the Court's review process and minimize any inconvenience caused by the length of the lodged materials.

Verification

I, Rob Emert, hereby declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*Rob Emert*

Rob Emert, Petitioner in Pro Per

04/05/24

000074 001096

Y.     3 Family Court Services recommending 50/50 custody and I initially was granted 60% to ease the transition due to being a stay at home dad.

000075 001095

court ot C

of Sao

# SUPERIOR COURT OF SANDIEGO

FAMIL     COURT     SERVICES

I LE D
of tho SuperiorCourt

December 10, 2019

DEC 11 2019

DATE OF HEARING: December 20, 2019

TO:     Department 17               19FL010852N
     Honorable Kelly C. Mok

FROM :    Liliana Rodriguez, MSW, Counselor
      Family Court Services

      Supplemental Report

OF:     Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
     Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

     Father: Andrea L. Emert
     Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation (s) | Alleged perpetrator (s) | Conclusion |
|---|---|---|---|
| 11/4/19 | Physical abuse to Bryce | Father | Unfounded |
| | physical abuse to Bryce | Mother | Unfounded |
| | emotional abuse to Bryce | no perpetrator listed | Inconclusive |
| | Emotional abuse to Skylar | parents | Unfounded |
| | At risk of abuse to Skylar | father | Unfounded |
| 10/24/19 | Emotional abuse to Bryce | parents | Unfounded |
| | At risk of abuse to Bryce | father | Unfounded |
| | Physical abuse to Skylar | father | Unfounded |
| | Emotional abuse to Skylar | parents | unfounded |

Department  17    000076    RE: Ernert/Emert/ 19FL010852N 001076
Family Court Services Report Dated December 10r 2019        Page 2

On December 10r 2019 the undersigned spoke to school counselor, Cecilia Breining. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all 'would provide the same information. Thus, she did not.

Grades current school year

| 1st grading period | 2nd grading period | As of 12/10/19 | 73 school days Absences | Late |
|---|---|---|---|---|
| D- | B- | | 10 | 6 |
| | | | 8 | 1 |
| c | | | | 1 |
| | | D- | 8 | |
| | c- | c- | 9 | |
| | PASS | | 11 | |

Grades for 6th Grade

| 1st Semester | 2nd Semester | Absences | Late |
|---|---|---|---|
| C- | | 23 | 11 |
| | | 19 | 4 |
| | | 14 | 3 |
| c | | 9 | 2 |
| A- | B- | 10 | 2 |
| B- | c | | |
| c | | 10 | 2 |

-2-

Department 17                                    RE: Emert/Emert/ 19FL010852N
Family Court Services Report Dated December 10, 2019              Page 3


                                                pectfully  ubmitted,

                                        4Cuaadd
                                            Iliana Rodriguez, MS
                                            Family Court Counselor
                                            760-201-8300

Cc:  Andrea L. Emert, Father
     Robert Emert, Father
     David S. Shulman, Attorney
     Timothy S. Miranda, Attorney

000078                                                          001179



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

December 10, 2019

**F I L E D**
Clerk of the Superior Court

**DATE OF HEARING: December 20, 2019**

DEC 11 2019

By: _____ Clerk

TO:        Department 17                              **19FL010852N**
           Honorable Kelly C. Mok

FROM:      Liliana Rodriguez, MSW, Counselor
           Family Court Services

RE:        Supplemental Report

OF:        Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
           Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

           Father: Andrea L. Emert
           Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation(s) | Alleged perpetrator(s) | Conclusion |
|---|---|---|---|
| 11/4/19 | Physical abuse to Bryce | Father | Unfounded |
| | physical abuse to Bryce | Mother | Unfounded |
| | emotional abuse to Bryce | no perpetrator listed | Inconclusive |
| | Emotional abuse to Skylar | parents | Unfounded |
| | At risk of abuse to Skylar | father | Unfounded |
| 10/24/19 | Emotional abuse to Bryce | parents | Unfounded |
| | At risk of abuse to Bryce | father | Unfounded |
| | Physical abuse to Skylar | father | Unfounded |
| | Emotional abuse to Skylar | parents | unfounded |

Department 17                    000079     RE: Emert/Emert/ **19FL0108521N**
Family Court Services Report Dated December 10, 2019              Page 2

On December 10, 2019 the undersigned spoke to **school counselor, Cecilia Breining**. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all would provide the same information. Thus, she did not.

Grades current school year

| 1st grading period | 2nd grading period | As of 12/10/19 |
|---|---|---|
| D- | B- | B |
| C+ | D+ | D+ |
| C | D+ | D |
| F | D+ | D- |
| A- | C- | C- |
| C+ | PASS | B- |

73 school days

| Absences | Late |
|---|---|
| 10 | 6 |
| 8 | 1 |
| 7 | 1 |
| 8 | |
| 9 | |
| 11 | |

Grades for 6th Grade

| 1st Semester | 2nd Semester |
|---|---|
| C- | D |
| A | A- |
| B | B |
| C | B- |
| A- | B- |
| B- | C |
| C | B |

| Absences | Late |
|---|---|
| 23 | 11' |
| 19 | 4 |
| 14 | 3 |
| 9 | 2 |
| 10 | 2 |
| | |
| 10 | 2 |

Department 17  
Family Court Services Report Dated December 10, 2019

000080    73    001182

RE: Emert/Emert/ **19FL010852N**   Page 3

Respectfully submitted,

*Liliana Rodriguez*

Liliana Rodriguez, MSW  
Family Court Counselor  
760-201-8300

Cc:  Andrea L. Emert, Father  
     Robert Emert, Father  
     David S. Shulman, Attorney  
     Timothy S. Miranda, Attorney

-3-

000081 001103



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

November 01, 2019

**F I L E D**
Clerk of the Superior Court

NOV 0 4 2019

By: _____ Clerk

**DATE OF HEARING: November 20, 2019**

| | |
|---|---|
| TO: | Department 17<br>Honorable Kelly C. Mok |
| FROM: | Liliana Rodriguez, MSW, Counselor<br>Family Court Services |
| RE: | Parenting Plan |
| OF: | Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)<br>Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)<br><br>Father: Andrea L. Emert<br>Father: Robert Emert |

19FL010852N

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

## DOMESTIC VIOLENCE

Although there are allegations of domestic violence in this case, the parents indicated their desire to participate together. The undersigned interviewed the parents separately to assess the appropriateness of a conjoint session and determined that it would be appropriate to proceed.

## FAMILY COURT SERVICES HISTORY

This is the parties' first conference at Family Court Services.

## PARENTING PLAN

The parents do not have a court-ordered parenting plan.

**CONFIDENTIAL REPORT**

Family Code 3025 5

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019         Page 2

The parenting plan as described by each parent is as follows: the
father has been the children's primary caregiver for the past five
years while the mother has been employed as a teacher.

## DEMOGRAPHICS (historical)

The parents were married on 9/30/06.
The parents filed for dissolution in September 2019.

## DEMOGRAPHICS (current)

Andrea L. Emert and Robert Emert reside in the San Marco area of San
Diego County, California.  Also residing in the home:  the children
at issue.  Andrea L. Emert is employed, schedule: 7:30 AM to 3 PM as
a school teacher. Robert Emert is unemployed.

The parents indicate they have requested the court determine who
will remain in the family home.

## AREAS OF AGREEMENT/DISAGREEMENT

The parents' points of agreement are as follows: shared legal
custody, alternate holidays, a vacation schedule, for there to be no
alcohol consumed during their parenting time, and for the children
to participate in therapy. They agreed for the father to parent the
children when the mother is working and the children are on school
break.

They did not agree a the parenting schedule.

## PARENTS' CONCERNS

There are allegations of domestic violence, substance abuse, and
mental illness in this matter.

Andrea L. Emert expressed the following concerns: the father engages
in arguments in front of the children and pulls them into arguments
by asking them their opinion on the issues being argued, determine
who is correct, and ask if they heard what was said. He has told the
children that Bryce will be in his custody 100% of the time and
Skylar will be in his care 50% of the time. The father drinks heavily.
He drinks a bottle of wine and a couple of beers nightly and always
when she is home. He stopped drinking when she filed the present
petition. He has no driving under the influence arrests.

The father denied the mother's expressed concerns regarding his
alcohol consumption. He stated that they both argue in front of the

-2-

000083                                                001106

Department 17                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019        Page 3

children. He answers the children's questions regarding divorce with the information he knows.

Robert Emert expressed the following concerns: The mother's emotional state, stating that she has been prescribed medication for depression and anxiety for years. She "flies" of the handle and yells. She has chased him around the house and placed her hands on the children years ago.

The mother denied the father's claims. She reported participating in therapy.

## PARENTS' PROPOSALS AND RATIONALE

Andrea L. Emert proposed the following parenting schedule: to provide the children with their primary residence and the father parent one Wednesday overnight and alternate weekends. She wants an opportunity to establish a relationship with Bryce. She would foster the children's independence. Additionally, she is the more reliable parent.

Robert Emert proposed the following parenting schedule: He requested Skyler be shared equally. He requested Bryce be shared equally after the father has a period of time to assist the child adjust to the schedule. The father was asked if he would agree to a three-month time to help the child adjust prior to the equal time parenting scheduled. He was agreeable.

## THE CHILDREN

Both parents denied the children have any unmet health, mental health, developmental concerns or special needs.

The parents indicate that Bryce is Autistic. He participates in general education. He is able to communicate and has friends. The parents indicate that he is able to take care of his self-care with some prompts. The mother stated that the father helps the child bathe and dress. The father indicated that he assists the child by laying out his washcloth, setting out chis clothes, and ensuring the child has rinsed properly. The father and Bryce have shared a bedroom since the child was the age of three. He assists Bryce with his homework while the mother assist Skylar. The parents agree that Bryce and the father have an extremely close relationship. The mother feels the father has pushed her out of that relationship by isolating himself and Bryce in the bedroom. Bryce participates in karate three times weekly.

-3-

000084
001166

Department 17                          RE: Emert/Emert/ **19FL010852N**
<u>Family Court Services Report Dated November 01, 2019</u>          Page 4

Skylar is enrolled in the 5th grade. She has no special needs. The child participates in extra-curricular activities to include soccer, theater, and voice lessons. The mother reports the child having a much closer relationship with her than the father. They do activities together and at times share a bedroom. The mother stated that the siblings do not have a close relationship because the father isolates Bryce. The father disagreed, stating that Skylar has an equally good relationship with both parents and the siblings love each other.

The children were not interviewed. Information gathered from the parents was sufficient to make a determination of the children's current experiences and functioning.

**REASONS FOR RECOMMENDATION**

The parents were able to reach substantial agreements and they will be incorporated into the recommendation. The parents described a marital relationship that ended nine years ago. It seems as if they cohabitated but live separately. The father and Bryce have an extremely close relationship while the mother has a closer relationship with Skyler. It appears as if the household was divided by gender.

The mother expressed concern with the father involving the children in the parents' arguments and conflicts. Additionally, he has spoken to them about possible parenting schedules. The father acknowledged both parents argued in front the children and exposed them to their conflict. He also acknowledged speaking to the children about possible parenting plans. The father expressed concern with the mother being violent and chasing him about the house. The mother denied his claim. The parents have been emotionally separated for many years and living together caused a great deal of stress and conflict. It is the hope of the undersigned the parents will be able to establish separate residences soon and co-parent. The undersigned recommends the parents participate in a co-parenting class and recommends they communicate via a child sharing application.

The undersigned is of the impression that both parents are capable of caring for the children and meeting their needs. Thus, it is recommended the parents share the care of the children. The undersigned agrees Bryce needs a little time to adjust to being away from the father. Their relationship seems almost emotionally dependent. Bryce has shared a bedroom with the father since the age of three. The parents reported the mother rarely spends time on her own with Bryce. Thus, it is recommended Bryce be in the mother's care alternate weekends and one overnight weekly prior to joining his sister's schedule.

-4-

000085                                                                      001168

Department 17                                RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 5

## RECOMMENDATIONS FOR THE PARENTING PLAN OF:

Bryce Emert, DOB: 06/11/07 (Age 12 years)
Skylar Emert, DOB: 06/06/09 (Age 10 years)

Father: Andrea L. Emert
Father: Robert Emert

1. **LEGAL CUSTODY**

   A. Andrea L. Emert and Robert Emert shall share joint legal custody, which means that Andrea L. Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional.
   B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.
   C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

2. **PHYSICAL CUSTODY**

   A. The children's physical custody shall be shared.
   B. The parenting of **Bryce** shall be shared as follows:
   i)    The mother shall parent alternate weekends. The weekend shall be defined as 8 AM Friday to 8 AM Monday.
   ii)   Bryce shall be in the care of the mother each Tuesday from afterschool/8 AM to dropping of at school/8 AM Wednesday.
   iii)  After the mother parents in accordance with 2Bii for 90 days, the mother's midweek parenting shall be defined as 8 AM Monday to 8 AM Wednesday.

   C. The parenting of **Skylar** shall be shared as follows:
   i)    Skylar shall be in the care of the mother from 8 AM to Monday to 8 AM Wednesday and with the father from 8 AM Wednesday to 8 AM Friday.
   ii)   The weekends shall be alternated between the parents and defined as 8 AM Friday to 8 AM Monday.

-5-

000086                                                                                    001169

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 6

## 3.  HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. **In absence of other agreement by the parents**, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---|---|---|---|---|
| Christmas Eve | 9 AM 12/24 to 9 AM 12/25 | | Mother | Father |
| Christmas Day | 9 AM 12/25 to 6 PM 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM - Day 6 PM | | Mother | Father |
| Easter Day | 8 AM - 8 PM | | Father | Mother |
| Mother's Day | 8 AM - 8 PM | Mother | | |
| Father's Day | 8 AM - 8 PM | Father | | |
| July 4th | 8 AM until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM - 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM - 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM - 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

## 4.  VACATIONS/SCHOOL BREAKS

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

000087                                                        001189

Department 17                         RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019         Page 7

5.    **EXCHANGES/TRANSPORTATION**

A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.

6.    **TELEPHONE/COMMUNICATION**

A. There shall be reasonable telephone contact between the children and the parents when in the other parent's care. The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.

B. All non-emergency and non-time sensitive communications shall be in writing and sent via a child sharing application, such as Talking Parents, Our Family Wizard or another mutually agreed upon.

7.    **CONDUCT/SAFETY**

A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

8.    **NOTIFICATION**

A. When either parent wishes to travel with the children outside the County of San Diego for overnight or longer during their parenting time, the other parent must be given 24 hours prior notice of date and time, destination and an emergency telephone number.

B. Each parent shall always keep the other informed of his/her address and telephone numbers and shall notify the other parent within 24 hours of any changes. Neither parent may use such information for the purpose of harassing, annoying, disturbing the peace of the other or invading the other's privacy.
C. If the children participate' in an AM/PM program, camp or cared for routinely by a childcare provider, the parents shall keep one another informed of those programs, addresses and telephone numbers.

-7-

000088                                                           001100

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019        Page 8

D. Should either parent require childcare for more than 8 hours or overnight while the children are in his/her physical care, the other parent shall have first option to provide such care.

E. At least 24 hours notice of any schedule change shall be given to the other parent. The parent requesting the change shall be responsible for any additional child care that results from the change.

F. Neither parent shall move the residence of the children out of San Diego County without giving the other parent a 45-day advance written notice and obtaining the other parent's written permission prior to the move or an order of the Court granting the move.

9.  **CLASSES/PROGRAMS**

A. Andrea L. Emert and Robert Emert shall enroll in and successfully complete a co-parenting course. The course shall specifically focus on parenting skills for divorced parents. The course shall be completed by March 30, 2020.

B. The children shall participate in counseling with a licensed mental health practitioner until released by the therapist. The parents shall cooperate and participate in the children's therapy at the discretion of the therapist. Issues to be addressed include: adjustment to new family dynamics, grief-loss, and any other issues identified by the parents and/or therapist.

    Possible resources include: private insurance; call 211 from any phone; or a Program Resource List may be obtained at Family Court Services or on the San Diego Superior Court website www.sdcourt.ca.gov.

000089                                                                 001189

Department 17                           RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 9

### 10. SUBSTANCE USE/MONITORING/ASSESSMENT/TREATMENT

    A. Andrea L. Emert and Robert Emert shall refrain from using alcohol during the time the children are in his/her care and for 12 hours prior to spending time with the children.

Respectfully submitted,

*Liliana Rodriguez*

Liliana Rodriguez, MSW
Family Court Counselor
760-201-8300

Cc:   Andrea L. Emert, Father
      Robert Emert, Father
      David S. Shulman, Attorney
      Veronica M. Aguilar, Attorney

-9-

# CONFIDENTIAL REPORT COVERSHEET

The Family Court Services Report attached hereto is **CONFIDENTIAL**.

**Monetary Sanctions**

By law, the court can impose a penalty (i.e. sanction or fine) for the unwarranted disclosure of the contents of this confidential Family Court Services report. This monetary penalty can be ordered against the disclosing party in an amount that is large enough to prevent that person from disclosing information in the future. The sanctions may also include reasonable attorney fees, costs incurred, or both.

**Access to this Report**

Pursuant to Family Code §§ 3025.5 and 3177, as the party receiving this report, you may not make this report available (including but not limited to showing, discussing, forwarding) to anyone other than the following:

1. The parties and their attorneys (including attorneys from whom the parties seek legal representation) and attorneys appointed to represent the child (i.e. Minor's Counsel);
2. Others authorized after court orders are issued making such disclosure permissible.

000091 001193



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

January 13, 2020

**F I L E D**
Clerk of the Superior Court

**JAN 1 3 2021**

By: _____ , Clerk
N. James

**DATE OF HEARING: February 4, 2021**

| | | |
|---|---|---|
| TO: | Department D-18 | **19FL010852N** |
| FROM: | Lisa Boswell, MSW, Counselor<br>Family Court Services | |
| RE: | Parenting Plan | |
| OF: | Bryce Emert, DOB: 06/11/07 (Age 13 years) (M)<br>Skylar Emert, DOB: 06/06/09 (Age 11 years) (F) | |
| | Mother: Andrea Emert<br>Father: Robert Emert | |

On December 16, 2020, Andrea Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea Emert and Robert Emert participated telephonically. Robert Emert is the moving party.

## DOMESTIC VIOLENCE

The parties denied any history of domestic violence.

## FAMILY COURT SERVICES HISTORY

This is the parties' second conference at Family Court Services.

The parties were originally seen at FCS in 2019. The Court is respectfully referred to prior FCS memos for additional historical information.

## PARENTING PLAN

The parents follow the court-ordered parenting plan.

**CONFIDENTIAL REPORT**

Family Code 3025 5

000092                                        001194

Department D-18                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 2

The parenting plan as described by each parent is as follows: Both parents agreed that they practice joint legal and joint physical custody at least since 2019.

## DEMOGRAPHICS (historical)

The parents were married on September 30, 2006.
The parents lived together from 2006-December 2019.
The parents filed for dissolution in September 2019.

## DEMOGRAPHICS (current)

Andrea Emert resides in the San Elijo area of San Diego County, California in a two-bedroom home. Andrea Emert is employed, schedule: Monday-Friday, 7:30 am – 3:00 pm.

Robert Emert resides in the Escondido area of San Diego County, California in a four-bedroom home. Also residing in the home: the paternal grandparents and the paternal aunt. Robert Emert is unemployed.

## AREAS OF AGREEMENT/DISAGREEMENT

The parents' points of agreement are as follows: joint legal custody, the holiday schedule, vacation time, the child exchange location, the first right of refusal, and to utilize a computer-based email program for all communication.

The parents' points of disagreement are as follows: the primary residence for both children, the parenting time for each parent for both children, and phone contact.

## PARENTS' CONCERNS

There are no allegations of domestic violence, child abuse, substance abuse, mental illness, or criminal histories in this matter.

Andrea Emert expressed the following concerns: The mother states the father allows the younger child, Bryce, to be emotionally and physically abused by the older child, Skylar and Skylar should have time away from Bryce.

The father denied that he allows the child, Bryce, to be emotionally or physically abuse by the child, Skylar and that he does not observe such behavior when the children are in his care.

-2-

000093                                                              001196

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 3

Robert Emert expressed the following concerns:  The father states
the child, Bryce, is not emotionally stable in the mother's care.
He shared that the child's, Bryce, grades have gone from A's and
B's to C's and D's. He believes the child, Bryce, is more
emotionally stable and cared for when he is in the father's care.

The mother stated the child is struggling with virtual learning.
The mother does believe the father and the child, Bryce, have a
close bond, yet she denies the child is neglected in her care.

**PARENTS' PROPOSALS AND RATIONALE**

Robert Emert proposed the following parenting schedule: The father
is proposing the parenting time for the child, Skylar, remain
unchanged. He is proposing the child, Bryce, resides primarily
with him and the mother care for the child each week, from
Wednesday, after school until Friday, at morning school drop-off,
and that the parents both have "reasonable" phone contact with the
children.

The father reiterated that the child, Bryce, is not emotionally
stable in the mother's care and his grades are suffering, thus he
should reside primarily with him. He believes both parents should
be able to reach out to the children on a reasonable basis and
there should not be a scheduled phone call order in place.

Andrea Emert proposed the following parenting schedule: The mother
is proposing the parenting time for the child, Bryce, remain
unchanged. She is proposing the child, Skylar, is in the father's
care every other weekend, from Friday until Sunday, that the
parents each have one scheduled phone call a day between 7:00 pm
and 8:00 pm for no more than 10 minutes.

The mother reiterated that the child, Skylar, needs to have a
"break" from her brother, Bryce, who has behavioral issues. In
addition, the father makes multiple calls daily and she believes a
phone call schedule should be instituted for both parents.

**THE CHILDREN**

Both parents denied the children have any unmet health, mental
health, developmental concerns or special needs.

Andrea Emert and Robert Emert shared the following factors, which
were important to be considered when developing a parenting plan:
Both parents reported the child, Bryce, is diagnosed with High
Functioning Autism. The child, Bryce, has an active IEP for
learning disabilities.

-3-

000094                                                                      001196

Department D-18                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 4

## CHILDREN'S INTERVIEW

On December 16, 2020, the undersigned interviewed the children. Information obtained from that interview was taken into consideration when developing the recommendations.

The undersigned interviewed both children while they were in the father's care and both children were asked, individually, if there were in a room where they could speak privately where no one could hear them speaking with the undersigned. Both children replied they were in private rooms.

Bryce is a 13-year old who is in the 8th grade at San Elijo Middle School. He shared that he enjoys his AVID class and does not enjoy math. He currently is attending Karate, which Bryce said he had been participating in for the previous six years. He stated he enjoys playing video games.

The child confirmed he spends equal time with each parent. When the child was asked to share how this plan is working, he replied, "Not working too well." Bryce explained that prior to the parents' divorce, he spent the majority of this time with his father and he has a close relationship with his father. He asserted that when he is in the mother's care, the mother controls his ability to speak with the father. He further asserted that he feels that when he is speaking with the father, while in the mother's care, the mother "forces him off the phone". He denied the mother loses her temper, but she may use curse words and take the phone away from him.

Bryce said he is "really nice to my sister". Conversely, he believes that he should have more time away from his sister.

Skylar is an 11-year old who is in the 6th grade at San Elijo Middle School. The child shared that her favorite subject is Science and she receives "good grades". She participates in musical theater, she used to play soccer prior to current pandemic, and she use to participate in dance in the "past".

The child confirmed that she spends equal time with both parents. She confirmed that she would enjoy spending less time with her brother in either home. Skylar stated she did not know what that type of schedule would look like. She stated she does not feel safe around her brother at times. The child stated her brother's behaviors are not new behaviors, but they have escalated since the parents' divorce.

The mother has told the undersigned during the FCS session that she was concerned that Skylar may not feel comfortable speaking

-4-

000095                                                                001195

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 5
_____

with the undersigned as she would be in the father's care at the time of the scheduled child interview. The undersigned explained that the child will be asked to be in a private room with no one within listening range during the interview. The mother shared that the child states to her that she feels as if someone is always at her bedroom door listening to her when she is on the phone. During the child interview with Skylar, the child stated on several occasions, "I think someone is listening outside the door". The undersigned asked the child why she felt as if someone was listening. She responded that she did not know, she just felt as if someone was standing outside her door listening.

**COLLATERAL INFORMATION**

The undersigned contacted Marguerite Widener, LCSW, children's therapist on December 21, 2020 and obtained the following summarized information: The undersigned called the therapist on 12/22/20, 12/23/20, and 1/11/2021 and each call the undersigned received a voicemail message and the message "the voicemail is full and cannot accept any messages at this time". As of the writing of this report, the undersigned was unable to speak with the children's therapist.

A screening through the local/State CWS Agency revealed the following summarized information: The family has three closed referrals since October 2019, when they were last seen at FCS.

1) 3/18/20-3/29/20: Allegations of physical abuse and emotional abuse to the child, Bryce, by the mother. This referral was not assigned for investigation and was **evaluated out.**

2) 3/2/20-4/7/20: Allegations of physical abuse to the child, Bryce, by the mother. This allegation was closed as unfounded. Allegation of general neglect to the child, Bryce, by the mother. This allegation was closed as **unfounded.** Allegations of emotional abuse to the children, Bryce and Skylar, by the father. This allegation was closed as **unfounded.**

3) 11/4/19-11/21/19: Allegations of physical abuse to the child, Bryce, by both parents. These allegations were closed as unfounded. Allegation of emotional abuse to both children with no perpetrator named. This allegation was closed as **inconclusive.** Allegation of at-risk sibling for the child, Skylar, with no perpetrator named. This allegation was closed as unfounded.

**REVIEW OF INFORMATION**

A portion of the Court File was reviewed by the undersigned.

000096                                                                    001199

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 6

**REASONS FOR RECOMMENDATION**

The parents were unable to agree upon a parenting plan for their children.

The father is the moving party. He is proposing the child, Bryce, reside primarily with him and the mother's parenting time occur Wednesday, after school until Friday. He is proposing the parents continue to practice joint physical custody of the child, Skylar. The mother is proposing the parents practice a joint physical custody of the child, Bryce and the father's parenting time for the child, Skylar, occurs every other weekend, from Friday until Sunday.

It was apparent to the undersigned that the parents have a very highly conflictual co-parenting relationship and both children are exposed and greatly affected by their high conflict co-parenting. The child, Bryce, has special needs such as high functioning autism. Both parents agreed, during the FCS conference, that they have practiced joint physical custody of the children since at least November 2019. The mother asserts the child, Bryce, is assaultive, both verbally and physically with the child, Skylar. Both children are actively attending therapy. The undersigned strongly urges both parents to actively participate in the children's therapy as directed by the therapist and request that the therapist conduct sibling sessions to address the concerns that the mother has about the child's, Bryce's behavior, towards the child, Skylar while they are in her care. Both parents are also high urged to not expose the children to their co-parenting conflict and work together with the children's therapist to establish a consistent routine in both of their households for each of the child's unique needs.

Based on the information gathered during the FCS conference and acknowledging both children's stated preferences, the undersigned is recommending no changes to the current parenting plan.

It is recommended that the parents enroll in and successfully complete an in-person high co-parenting conflict course.

It is recommended that both children continue to attend individual therapy and both parents actively participate in the children's therapy as directed by the therapist.

Based on the aforementioned information, the following recommendations are respectfully submitted to the Court consideration.

-6-

000097                                                                    001190

Department D-18                           RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 7

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

Bryce Emert, DOB: 06/11/07 (Age 13 years)
Skylar Emert, DOB: 06/06/09 (Age 11 years)

Mother: Andrea Emert
Father: Robert Emert

1.   **LEGAL CUSTODY**

   A. Andrea Emert and Robert Emert shall share joint legal
      custody, which means that Andrea Emert and Robert Emert
      shall share the right and responsibility to make decisions
      relating to the health, education, and welfare of their
      children and consult each other regarding enrollment and
      disenrollment in school, beginning/ending mental health
      services and selection or changes of a doctor, dentist or
      other health professional.
   B. Each parent shall have access to medical and school records
      pertaining to the children and may consult with any
      professionals involved with the children. It is each
      parent's responsibility to request school calendars,
      progress reports, report cards and parent-teacher
      conferences directly from the school.
   C. Each parent may obtain emergency health care for the
      children without the consent of the other parent. Each
      parent is to notify the other parent as soon as reasonably
      possible of any illness requiring medical attention or any
      emergency involving the children.

2.   **PHYSICAL CUSTODY**

   A. The children's physical custody shall be shared.
   B. Joint physical custody of the children shall be shared as
      follows:
    i)   Each parent shall care for the children during
         alternating weekends from Friday at school dismissal, or
         3:00 p.m. until Monday at 3:00 pm.
    ii)  The mother shall care for the children every week from
         Monday at school dismissal, or 3:00 p.m. until Wednesday
         at school dismissal, or 3:00 p.m.
    iii) The father shall care for the children every week from
         Wednesday at school dismissal, or 3:00 p.m. until Friday
         at school dismissal, or 3:00 p.m.

000098                                             001196

Department D-18                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 8

3.    **HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS**

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. Unless noted, all single-day holidays shall be from 8 AM to 8 PM. In absence of other agreement by the parents, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---|---|---|---|---|
| Christmas Eve/Christmas Day | 9 AM, 12/24 until 9 AM, 12/25 | | Mother | Father |
| Christmas Day/Day after Christmas | 9 AM, 12/25 until 6 PM, 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM – Day 6 PM | | Mother | Father |
| Easter Day | 8 AM – 8 PM | | Father | Mother |
| Mother's Day | 8 AM – 8 PM | Mother | | |
| Father's Day | 8 AM – 8 PM | Father | | |
| July 4th | 8 AM – until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM – 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM – 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM – 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

4.    **VACATIONS/SCHOOL BREAKS**

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

000099                                                                     001199

Department D-18                         RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021            Page 9

5. **EXCHANGES/TRANSPORTATION**

   A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.
   B. The children shall be exchanged at the designated times, with a 15-minute grace period. Should a longer delay be necessary, the other parent shall be notified immediately or that parenting time shall be considered canceled.

6. **TELEPHONE/COMMUNICATION**

   A. There shall be reasonable telephone contact between the children and the parents when in the other parent's care. **The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.**
   B. Email communication: The parties shall use a co-parenting email system, such as Our Family Wizard or TalkingParents.com for all non-emergency communication. The parties shall each establish a parent account, and enroll in the program within 21 days of this order and annually thereafter, to conduct all communications regarding custody or visitation matters, information-sharing matters, schedule alterations and reimbursable-expense matters on the website. The parties shall not telephone, e-mail or text each other regarding issues related to the child except in an unanticipated or emergency situation where response is required in less than 24 hours. Each party shall respond to the other party's request or notification within 48 hours of the posting, if a response is either requested or appropriate. Each party shall allow "professional access" to any licensed legal or mental health professional.

7. **CONDUCT/SAFETY**

   A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

000100 001100

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 10
_____

8. **NOTIFICATION**

   A. When either parent wishes to travel with the children outside the County of San Diego for overnight or longer during their parenting time, the other parent must be given 24 hours' prior notice of date and time, destination and an emergency telephone number.

   B. Each parent shall always keep the other informed of his/her address and telephone numbers and shall notify the other parent within 24 hours of any changes. Neither parent may use such information for the purpose of harassing, annoying, disturbing the peace of the other or invading the other's privacy.

   C. If the children participate in an AM/PM program, camp or cared for routinely by a childcare provider, the parents shall keep one another informed of those programs, addresses and telephone numbers.

   D. Should either parent require childcare for more than **eight hours** or overnight while the children are in his/her physical care, the other parent shall have first option to provide such care.

   E. Neither parent shall schedule activities for the children during the other parent's scheduled parenting time without the other parent's prior agreement.

   F. At least 24 hours' notice of any schedule change shall be given to the other parent. The parent requesting the change shall be responsible for any additional child care that results from the change.

   G. Neither parent shall move the residence of the children out of San Diego County without giving the other parent a 45-day advance written notice and obtaining the other parent's written permission prior to the move or an order of the Court granting the move.

9. **CLASSES/PROGRAMS**

   A. Robert Emert and Andrea Emert shall enroll in and successfully complete an in-person high conflict co-parenting course. The course shall be completed by 4/1/2021.

   B. The children shall participate in counseling with a licensed mental health practitioner until released by the therapist. **The parents shall cooperate and participate in the children's therapy at the discretion of the therapist.** Issues to be addressed include: exposure to high level of co-parenting conflict, sibling relationship, and any other mental health issues that arise.

000101                                                                001103

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021         Page 11

C. Possible resources include: private insurance; call 211 from any phone; or a Program Resource List may be obtained at Family Court Services or on the San Diego Superior Court website www.sdcourt.ca.gcv.

Respectfully submitted,

Lisa Boswell, MSW
Family Court Counselor
619-844-2939

Cc:   Andrea Emert, Mother
      Robert Emert, Father
      David Schulman, Attorney

-11-

# APPENDIX E

California Court of Appeal Denial
Case No. D083239


Fourth Appellate District, Division One

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

> Court of Appeal
> Fourth Appellate District
>
> **FILED ELECTRONICALLY**
> **09/14/2023**
>
> Brandon L. Henson, Clerk
> By: Alissa Galvez

ROBERT EMERT,

     Petitioner,

     v.

THE SUPERIOR COURT OF SAN DIEGO COUNTY,

     Respondent;

THE PEOPLE,

     Real Party in Interest.

D082709

(San Diego County
Super. Ct. No. SCD297230)

THE COURT:

The petition for writ of mandate has been read and considered by Justices O'Rourke, Irion, and Dato. The petition is denied.

IRION, Acting P. J.

Copies to: All parties